**DALLAS GENERAL DRIVERS, WARE-HOUSEMEN AND HELPERS et al.,**
Appellants,

v.

**JAX BEER CO. OF WACO, Texas, Appellee.**

No. 14949.

Court of Civil Appeals of Texas.

Dallas.

Feb. 25, 1955.

Mullinax & Wells, Otto B. Mullinax, Dallas, for appellants.

Rawlins, Sayers, Scurlock & Eidson and Nelson Scurlock, Fort Worth, for appellee.

CRAMER, Justice.

Appellee Jax Beer Company of Waco, Texas, filed this proceeding on Oct. 11, 1954, against appellant Union and certain of its members, alleging in sworn pleadings, in substance, that it is a corporation lawfully engaged in the sale, delivery and distribution of beer in McLennan County and that defendants, appellants here, have been acting in concert with each other and others unknown in the commission of offenses and other conduct which has been ratified, acquiesced in and condoned by the Union and its agents; that it employs four regular driver-salesmen, one warehouseman-driver, and one utility-man-driver, each under oral weekly contract; that the Company president at times physically performs duties necessary to the operation of the business; that its business is wholesale, handling and selling approximately $331,111 worth of products per year and through the good will, etc., it has built up and except for the conduct of the defendants it could lawfully continue its business. That no labor dispute exists between appellee and its employees as to wages, hours, working conditions, or other conditions of employment, and none of the plaintiffs presently employed desire Local 745 to represent them as their bargaining agent. That on or about Sept. 25, 1954, the Union and its agents and others acting in concert with them agreed to a course of conduct for the purpose of compelling appellee to recognize appellant Union as the exclusive bargaining agent of its employees, and to unionize its place of business, by requesting it to contract with Local 745 in respect to all its employees as to wages, hours, working conditions, etc., knowing that a majority of said employees did not and do not desire said Local to act as their bargaining agent. As a part of such conspiracy the named defendants and those acting in concert with them agreed that if appellee did not comply, appellants here would destroy the business, property, profits, good will, etc., of appellee and would assault, beat, intimidate, and harass it and its employees who did not submit to their unlawful demands, all of which violates the Texas Anti Trust and Anti Monopoly statutes; and to effectuate such purpose they would establish a picket line at appellee's place of business with false banners, etc., and establish a secondary picketing and boycott in violation of Art. 5154f, Vernon's Ann.Civ.St.

Appellee declined to recognize the Union, giving as its reasons, (1) it seriously doubted whether its operations came under the jurisdiction of the NLRB; (2) that the unit of truck drivers and helpers the Union claimed to represent is a nonexisting unit since appellee employs no helpers; (3) they entertain doubt as to the Union's majority status; and (4) it is the fixed policy of the Company to insist on Board-ordered elections and suggested that appellants petition the NLRB for an election to resolve the questions involved. Appellee further alleged that it has now definitely determined that its operations are not under the jurisdiction of the NLRB and that Local 745 is not authorized to represent a majority of its employees; that appellants, their agents, members, etc., as a part of the conspiracy for purpose of effectuating and carrying the same to a conclusion, have committed certain overt acts of violence to its newly employed drivers; circulating among its drivers that they had better join the Union or something would happen to them; had called up certain of appellee's customers advising them that appellee was unfair to its employees and to the Union; that on Oct. 6, 1954 appellants established a picket line at and around its place of business with banners reading: "We protest the Refusal of Jax Distributing Company of Waco to Recognize and Bargain with Teamsters Local Union 745, A.F.L. and Discharge of

our Members." That appellants notified appellee's customers of the existence of its picket line and that appellee had wrongfully refused to recognize its picket line; and as a result many customers ceased to do business with appellee; interfered with its drivers by following them around and so conducting themselves as to create, and did create, fear in their minds; and alleged $25,000 damage; sought and secured thereby a temporary restraining order, and after hearing a temporary injunction. Appellee also prayed for $50,000 actual damage, permanent injunction, general relief, etc.

Appellants pled fully to the jurisdiction of the court and also by plea in abatement based on appellee's failure to exhaust its administrative remedies before the NLRB; that appellee did not allege or show that it had sought relief before the NLRB or that NLRB would not assert or exercise its jurisdiction if invoked.

The temporary restraining order was first granted and after a hearing later the trial court granted the temporary injunction, enjoining appellants from (1) picketing the premises of plaintiff or any entrances or exits leading to or from such premises; (2) from the commission of any act or acts of violence, or making any threats of violence or bodily injury to appellee's officers or employees or any member of the public seeking to transact business with appellee; (3) from committing any act or the use of any means by word of mouth or otherwise, to encourage members of the public (a) not to transact business with appellee or (b) to purchase merchandise sold and delivered by appellee; (4) from in any manner encouraging or seeking to prevent those engaged in the retail sale of beer in McLennan County from purchasing or reselling beer handled or sold by appellee whether delivered to them by a Union or a non-union employee; (5) from the use of insulting, threatening, indecent, or obscene language toward appellee's employees who desire to work for appellee for the purpose of interfering with, hindering, and/or intimidating said employees while at or near appellee's place of business in Waco or while driving or operating the motor vehi-

cles of appellee in the execution of their duties as such employees; and (6) from publishing orally or in writing or displaying any statement to the effect, or implying that appellee has discharged two or more of its employees who were members of the Union.

Separate transcripts have been filed under our same cause number from the granting of the temporary restraining order and from the temporary injunction; however, a statement of facts has been filed in this Court in the appeal from the order granting the temporary injunction only. Briefs have been filed on each of the appeals.

Based on the record showing that the temporary injunction was granted by the order signed Oct. 28, after the temporary restraining order granted and signed Oct. 11, we must hold that the appeal bond based on the granting of the temporary restraining order gave this Court no jurisdiction of the appeal from such restraining order.

The Union on the appeal from the granting of the temporary injunction briefs three points of error in substance that the trial court, (1) had no jurisdiction to issue an injunction, at least until it was alleged and shown that appellee had exhausted its remedies under the Taft-Hartley Act, 29 U.S.C.A. § 141 et seq.; (2) abused its discretion in issuing a restraining order without notice and a temporary injunction since it deprives appellants of free speech and assembly guaranteed by the Constitutions of Texas and the United States; and (3) trial court had no jurisdiction to issue an injunction—at least until it was alleged and shown that appellee had exhausted its remedies under the Taft-Hartley Act.

Appellee answers with seven counterpoints in substance: (1) Trial court did not err in taking judicial notice of the rules of NLRB, particularly those promulgated June 30, 1954 and amplified and explained by the Board on July 15, 1954; (2) trial court had jurisdiction to hear and determine this case when it was made to appear that the Board would no doubt decline to

exercise its powers once its jurisdiction was invoked in connection therewith; (3) trial court had jurisdiction which was primarily a suit for damages arising out of a tort committed against appellee and where the rights of the parties would necessarily be determined by Texas law; (4) trial court was authorized to issue the temporary injunction to prohibit picketing then being done for an unlawful purpose, and appellants were not deprived of their right of free speech; (5) trial court was authorized to issue the temporary injunction to prohibit picketing which was an integral part of the methods and unlawful course of activities employed by the Union; (6) there was evidence to sustain the trial court's finding of irreparable injury; and (7) trial court did not abuse its discretion in issuing the injunction.

In the judgment granting the temporary injunction the court found the facts in substance, material to this appeal, as follows: Appellee (1) is engaged in the wholesale distribution of beer in McLennan County, Texas; (2) does not operate as an integral part of any multi-state enterprise, but purchases Jax beer in wholesale quantities f.o.b. New Orleans and has the beer shipped to its place of business in Waco, Texas where it is sold to retail establishments in and out of Waco; such purchased beer has a value of less than $500,000 a year; appellee's fiscal year ending May 31, 1954 showed its beer imported was approximately $367,000 which included transportation charges and the State tax; also that the total gross income from the sale of such beer during such fiscal year amounted to approximately $455,000; (3) stated that the court took judicial notice of the fact that on June 30, 1954 and amplified on July 15, 1954, the NLRB promulgated certain rules and regulations defining jurisdictional standards of the Board, more particularly paragraphs 3, 3a, 3b, and 7. (4) That during the latter part of September 1954 certain officers of appellant Union started to organize the employees of appellee and other wholesale distributors in McLennan County, Texas. At that time appellee had in its employment six employees, **four of** whom served as driver-salesmen with regular routes and two of whom served as drivers of a truck or station wagon on special occasions to deliver special orders. Employees Ed Arnold and Wesley Turner joined appellant Union. A third employee, Fred Toles, testified he attended a union meeting but did not join, and denied that he signed an application card. The court found such testimony to be true; also that Toles refused to participate in a strike and refused to cooperate with appellants in their activities directed at appellee and its employees, and that Ed Arnold and Wesley Turner had notice thereof before the picketing of appellee's place of business began on Oct. 6, 1954. (5) That on Sept. 25, 1954, the Union wrote a letter to appellee stating that the Union represented a majority of appellee's drivers and helpers and sought recognition as the bargaining agent to negotiate a contract; that about the same time a representative of appellant Union called appellee and orally gave Herb Gritter the same information at which time Gritter informed the Union representative that he was wholly inexperienced in regard to such matters and would have to consult his attorneys. That his attorneys on Sept. 27, 1954, by letter, advised appellants as follows: "Gentlemen: Your letter of September 25, 1954, addressed to Mr. A. J. Gritter, in which you claim to represent a majority of his truck drivers and helpers has been handed to us for consideration and answer. We have considered your letter together with all of the information available and are authorized to advise you as follows: We decline to recognize your union at this time because (1) grave doubts exist as to whether or not this company's operations now come under the jurisdiction of the National Labor Relations Board; we are of the opinion that the new jurisdictional rules issued by the Board on June 30, 1954, removed this company from the Board's jurisdiction; (2) the unit of truck drivers and helpers which you claim to represent is a nonexistent unit inasmuch as this company employs no helpers; therefore, the unit sought is vague, insufficiently defined, and inappropriate; (3) we entertain a bona fide doubt as to the union's

majority status; and (4) it is the fixed policy of this company to insist on Board-ordered elections as being the only reliable method of establishing appropriate units and majority status. We suggest that you petition the National Labor Relations Board for an election so that the above questions may be resolved by the authority provided by law. The recent visit of Mr. Piland and Mr. Roseborough to Mr. Herb Gritter caused us to send to Mr. Gritter a letter of advice. That letter of advice discusses the various questions arising as a result of Mr. Gritter's conversation with Mr. Piland and Mr. Roseborough. A copy of that letter of advice is enclosed herewith." (6) That at the time the Union communicated with Gritter, appellee's president, requesting Union recognition appellee's relations with its employees had been amicable and there had been no complaint from the employees as to wages, hours and working conditions, and no labor dispute existed. (7) That during the week beginning Sept. 26, 1954, Gritter learned that Ed Arnold, a driver-salesman, had been to two drive-in taverns located on the regular route of employee Bartosh and that Bartosh had refused to join the Union or to attend union meetings after being invited to do so; that Arnold talked with the owners and encouraged them not to buy beer from Bartosh; that on two occasions Gritter talked to Arnold about his interfering with Company business and that he considered his conduct as acts of disloyalty; that Arnold admitted to Gritter that he had discouraged the customers named. Arnold was later, on Oct. 2, 1954, discharged for disloyalty in such respect. (8) That on Oct. 2, Arnold was due his weekly check and when he came in off his route he checked in $41.50 short, which he had given to his wife. While it had been the practice, because the Banks closed at noon on Saturdays, for plaintiff to cash checks and bring in the cash, however appellee had never authorized Arnold or any of its employees to appropriate and use part of the Company funds before a wage check was delivered to them. This conduct was assigned as a cause of his discharge. (9) Employee Turner continued to work through Tuesday, Oct. 5, and on Wednesday, Oct. 6, he did not report to work and has not reported for work since that time. That this is a one-man strike. That Wesley Turner was the only man who participated in it. (10) On Wednesday, Oct. 6, Herb Gritter contacted each of his employees, then five in number, and inquired as to what their wishes were with reference to belonging to the Union and whether they wanted the Union to represent them as bargaining agent, explaining that he had no objection if they wanted to belong to the Union. That each of the employees, Curtis Coleman, Henry Bartosh, Jerry Gronas, Fred Toles, and Ernie Johnson, orally and in writing, expressed himself to the effect that he did not want a union. (11) On Wednesday, Oct. 6, the Union set up a picket line adjacent to appellee's place of business; Ed Arnold and Wesley Turner acting as pickets, carrying the banner hereinabove set out, and continued such picketing until the temporary restraining order was issued. (12) On or about Saturday, Oct. 2, Worley and Fort, union members, contacted appellee's driver Bartosh while making a delivery on his regular route at Pulley's Drive-In and one of them accused Bartosh of having cursed him. Bartosh denied this, stating he did not know and had not seen them before. They followed Bartosh out of the Drive-In and Worley assaulted him, hitting him several times with his fist and knocking him down; that Worley is considerably larger than Bartosh. That Fort then knocked over crates containing empty bottles, scattering them on the ground. Bartosh suffered bruises, a bleeding laceration, and was fearful for his safety. (13) About the same time Worley and Fort made the same approach to Leonard Dehart, a driver-salesman for one of the other wholesale beer distributors in Waco who had refused to join the Union. Dehart declared his innocence and that he had not seen them before. However Fort attempted to hit Dehart with his fist but Dehart avoided the blow, entered the cab of his truck, and drove to Brown's Drive-In to make another delivery. He was followed by Worley and Fort and was at-

tacked first by Fort, but when Dehart resisted, Worley joined in. Dehart was hit with a beer bottle and two of his ribs were fractured. (14) After the activities above, two men in an automobile stopped Toles while he was in the course of his employment and inquired whether he had joined the Union and was told he had better join; that things could happen if he did not join. (15) That appellee suffered damages in decreased volume of business of $300 per week; also collateral damages and damage to its good will; that appellee's organization and the orderly operation of its business are being disrupted and such damages are particularly impossible of proof.

The trial court then concluded (a) that under the recent NLRB regulations it would refuse to exercise its powers and exercise its jurisdiction if invoked and further that appellee's suit is primarily for damages and that the injunction sought is ancillary relief to preserve the status quo pending final hearing and that it has jurisdiction of the cause. (b) That appellants conspired or joined together in an effort to force appellee to recognize the Union as bargaining agent for its employees and that their efforts continued after it was apparent that the Union did not represent a majority of such employees and while it would have been improper for appellee to carry out their demands, in that it would violate the fundamental rights of the employees in their free choice of a bargaining representative. (c) Banners used contained misrepresentations. The court then set out numerous findings which for the sake of brevity we will not copy herein, and then concluded that the temporary injunction should be granted in order that the status quo which existed prior to such controversy should be restored and continued until trial on the merits.

■■ Point 1 attacks the jurisdiction of the trial court to issue the injunction until a prima facie showing that appellee has exhausted its remedies under the Taft-Hartley Act, is made. It was stipulated by appellee that it had not filed any character of charge before the NLRB. This point is countered that trial court had jurisdiction (a) when it appeared that the NLRB would no doubt decline to exercise its powers once its jurisdiction was invoked, and (b) since this is primarily a suit for damages arising out of a tort committed against appellee where rights would necessarily be decided by Texas law.

The record shows appellee receives its beer from New Orleans and distributes and sells it as an independent wholesale dealer to retail dealers in the Waco area and has not attempted to have its controversy passed upon or to secure relief thereon by the NLRB, or to obtain relief against a secondary boycott and/or picketing in accordance with secs. 8(b) (4), and 10, of the Taft-Hartley Act.

The material question is whether or not the trial court had a right to take judicial notice of certain rules which the NLRB promulgated defining jurisdictional standards. Such rules were not introduced in evidence. It is not disputed, however, that under such standards, if the NLRB followed such rules, it probably would not take jurisdiction of this case and that appellee would be relegated to such relief as it could obtain in the State courts.

The rule the trial court took judicial notice of was that the Board would assert jurisdiction over the following types of companies:

"3. An establishment operating as an integral part of a multi-state enterprise, other than a retail or service establishment, if one of the following tests is met: (a) The plant involved has a direct outflow of goods into interstate commerce amounting to $40,000 a year (thus meeting the standard of category 4) or furnishes goods to the value of $100,000 a year to interstate concerns coming within categories 1, 2, or 4 of this list, or (b) If the plant involved does not meet the separate plant tests listed in (a) above, jurisdiction will be asserted if the multi-state enterprise, of which the plant is a part, has a total outflow of $250,000 a year into interstate com-

merce. **7.** Enterprises other than retail establishments which have a direct inflow of goods or materials from out of state valued at $500,000 a year or more."

In Texas Law of Evidence, McCormick and Ray, it is stated in sec. 84, p. 142, that: "Administrative rules adopted by boards, departments, and commissions pursuant to federal statutes are always matters of judicial knowledge." See also 16 Tex. Digest, Evidence, ▓ p. 129. In Minardus v. Zapp, Tex.Civ.App., 112 S.W.2d 496, at page 499, it was stated: "It is generally held that state courts must take judicial knowledge * * * of rules and regulations of federal boards and commissions", citing McCormick and Ray. See also Fuller v. Minter, Tex.Civ.App., 215 S.W. 2d 207, and Wichita Falls & Southern Ry. Co. v. Lodge, etc., Tex.Civ.App., 266 S.W. 2d 265.

The weight of authority being in favor of the trial court's taking judicial knowledge of said administrative rules, the objection to our noticing and considering them is overruled.

The question, however, as to whether such rules are applicable here is another question. The cause here is not within the class covered by the rules pertaining to cases over which the Board will assume jurisdiction.

The record also shows the Union did not represent a majority of appellee's employees.

Under such state of the record we cannot hold that the Board will assume jurisdiction of this cause which is not within the coverage of its own rules. The state court is therefore not deprived of jurisdiction of this cause.

Point 1 is overruled.

Point 2 asserts that trial court abused its discretion in granting the injunction because it deprives them of their constitutional right of free speech and assembly. This point is countered that the picketing being for an unlawful purpose, appellants were not deprived of their rights of free speech; that the injunction was proper since the picketing was an integral part of the methods, and unlawful course of activities, employed by appellants.

▓▓ Picketing is not merely the exercise of free speech, but is an economic weapon and the use of such an economic weapon may be enjoined if the objective is not lawful or the means of carrying it out are violent. The evidence here made an issue of fact as to whether the Union did or did not represent a majority of the employees of appellee; also shows violence. The witness Bartosh testified he was assaulted at Pulley's Drive-In on his regular route for appellee.

Under such record the trial court's exercise of its discretion, in the granting of the temporary injunction, was not abused. Point 2 is overruled.

▓ Point 3 asserts error in granting the temporary injunction without a showing of irreparable injury or inadequacy of remedy at law. This point is countered that the evidence supported the finding of irreparable injury and that the trial judge did not abuse his discretion.

The president of appellee company testified that the picket line materially affected his business, in that a number of his customers stopped handling and refused to buy beer from him; estimated such loss of business at approximately three or four hundred cases of beer per week, or about a 10% reduction in his business, which loss amounted to the difference between the making of a profit and the making of no profit; also the unknown profits lost because of the advertising of his company as being unfair to its employees; the cost of advertising and acquiring new business to that extent, or the securing of lost customers to again trade with him, which will total several hundred each year it is necessary, made issues of fact on material financial injury to appellee.

In our opinion there being issues of fact made by the evidence on the material facts

in issue, the trial court did not abuse its discretion in granting the temporary injunction. Point 3 is overruled.

Finding no reversible error in the trial court's exercise of its broad discretion in the granting of the temporary injunction, the judgment thereon should be affirmed. Appeal from temporary restraining order is dismissed for want of jurisdiction, and the judgment granting the temporary injunction is

Affirmed.