BUILDING TRADES COUNCIL OF RENO AND VICINITY, AND INTERNATIONAL BROTHER-HOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 401, APPELLANTS, *v.* J. S. BONITO, RESPONDENT.

No. 3815

February 23, 1955. 280 P.2d 295.

(Rehearing denied March 21, 1955.)

*Harry D. Anderson,* of Reno, for Appellants.

*Springmeyer & Thompson,* of Reno, for Respondent.

## OPINION

By the Court, EATHER, J.

This is an appeal from an order of the district court entered after notice and hearing which granted a preliminary injunction restraining appellant labor organizations from listing or continuing to list the name of respondent or respondent's motel property (Harold's Motel), on any unfair or "We Do Not Patronize List," by whatever name called, issued or published by appellants.

Respondent J. S. Bonito, owns and operates Harold's Motel located on U. S. Highway No. 40, west of Reno. The original motel consisted of seven units. In the winter of 1950–1951, while seven additional units were being constructed by respondent, the motel was placed on the "We Do Not Patronize List" published and issued by the Building Trades Council of Reno and Vicinity, after negotiations with respondent conducted by business agents of the local Carpenters Union and a committee of the council regarding the employment of union labor, had resulted unsatisfactorily from the point of view of the labor organizations.

Some time in 1953, respondent sought to have an electric neon sign manufactured and placed on his property

to advertise his motel. He testified that none of the companies engaged in such business in Reno, Nevada, would manufacture and erect the sign, advising him that he was on the "We Do Not Patronize List." Thereupon, respondent engaged the Pacific Neon Company of Sacramento, California, to manufacture and install the sign.

In November 1953, two union employees of the Pacific Neon Company transported the prefabricated sign from Sacramento to Harold's Motel. Before commencing installation, they communicated with the business agent of the Electrical Workers Local, and being informed that Harold's Motel was listed on the "We Do Not Patronize List," the employees refused to erect the sign and returned with the sign to Sacramento.

Respondent and his wife operate and manage the motel and had employed no one since September 1952. They were employing no one in November 1953.

Our first question is one of jurisdiction. Appellants contend that exclusive jurisdiction over this controversy is held by the National Labor Relations Board under the provisions of the National Labor Relations Act, 29 U.S.C.A., secs. 151 et seq. In this connection appellants rely upon Garner v. Teamsters Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, to the effect that Congress having occupied the field of labor disputes in connection with interstate commerce, that field is not available to the states.

The question remains, however, whether the labor dispute with which we are here concerned falls within the field occupied by Congress through the National Labor Relations Act. The National Labor Relations Board has consistently refused to assert jurisdiction over the hotel industry. In Hotel Association of St. Louis, (1951), 92 N.L.R.B. 1388, such was the determination of the board. In its decision and order in that matter the board stated:

"As was said in the majority opinion in the Greenbrier

Hotel case [The White Sulphur Springs Company, 85 N.L.R.B. 1486 (1949)], 'nothing in the legislative history of the present Act indicates dissatisfaction by the Congress with the Board's longstanding policy,' running back to 1935, not to assert jurisdiction over hotels. This interpretation of congressional intent is borne out by the opinion expressed on the floor of the Senate on August 30, 1949, when, upon questioning by Senator Pepper, Senator Taft said, without opposition being voiced by any other senator that: '* * * The Taft-Hartley law did not change in any way the language providing for the jurisdiction of the Board, or the general definition of interstate commerce. * * * It was not my intention in 1947, nor do I believe it was the intention of other members of the Committee on Labor and Public Welfare, to broaden or extend the jurisdiction of the Board in that respect. In fact, I feel very strongly that it should not be done. * * * A hotel performs its service within four walls. It ships nothing into commerce. It produces no goods for commerce. In my opinion the Act was never intended to cover the hotel industry. * * *'

"This expression of Senate views coincides exactly with the views set forth by those members of the House of Representatives who recently had occasion to inquire into and comment officially upon the same subject."

Accepting as the intent of Congress the interpretation of the N.L.R.B. itself, the dispute with which we are here concerned falls within a field which the federal government has declined to occupy. This being the case, the court below properly exercised jurisdiction.

Our next question is whether the objective of the appellants in placing Harold's Motel on the "We Do Not Patronize List" was a lawful objective.

That the propriety of concerted union activity is to be judged by the lawfulness or unlawfulness of the labor objective has been settled by the decisions of this and

other courts. Building Trades Council v. Thompson, 68 Nev. 384, 234 P.2d 581, 32 A.L.R.2d 324. Ann. 174 A.L.R. 593. Ann. 32 A.L.R.2d 342.

Basing its findings upon substantial evidence in the record, the trial court found: "When the manager of the Reno Employers Council discussed with the Business Agent of defendant Electrical Workers Union, the matter of the refusal of the aforesaid Union workmen to install the sign on plaintiff's premises, he was informed, in substance, that plaintiff would have to sign an agreement to hire union help before his name would be removed from the "We Do Not Patronize List." And concluded from this finding and others: "The demand that plaintiff, by oral or written agreement, undertake to hire union employees, is an unlawful objective."

There can be no doubt but that an agreement by an employer to hire only union employees has been declared by the people of this state to be an unlawful objective. 1953 Statutes of Nevada, page 1. (Right to Work Initiative Petition.)

Section 2 of this act provides: "No person shall be denied the opportunity to obtain or retain employment because of nonmembership in a labor organization, nor shall the state, or any subdivision thereof or any corporation, individual, or association of any kind enter into any agreement, written or oral, which excludes any person from employment or continuation of employment because of nonmembership in a labor organization."

Section 7 provides: "Any person injured or threatened with injury by an act declared illegal by this act shall, notwithstanding any other provision of the law to the contrary be entitled to injunctive relief therefrom." Local Union No. 10 v. Graham, 97 L.Ed. 946, 345 U.S. 192, 73 S.Ct. 585.

Appellants insist that the "agreement to hire union help" to which the trial court's findings refer, was not

in fact such an agreement but was simply an agreement that respondent designate the union as respondent's employment agency. We think that this is an unrealistic and unreasonable interpretation of the agreement referred to. The clause in question reads as follows: "The employer agrees that when craftsmen covered by this agreement are required, the employer shall first apply to the union to supply such craftsmen. If the union shall be unable, within 48 hours, to supply such craftsmen, the employer may employ craftsmen from such other source as he may choose." By such a provision the employer, in practical effect, agrees that so long as the union is able to supply craftsmen, he shall employ only union labor. So long as the union is able to supply craftsmen, then, those not union members would be deprived of opportunity to obtain employment because of their nonmembership.

It may next be noted that if the 48-hour limitation is valid, a 10-day limitation would likewise be valid. The employer, under such an agreement, would have to await the expiration of the specified period before being at liberty to employ craftsmen from other sources. For an employer to deny employment to a nonunion member is no less a violation of section 2 of the Right to Work Act of 1953, even though the denial may be limited to a 48-hour period. The expression "No person shall be denied" cannot by construction or interpretation be read to include a provision that a denial for 48 hours is not a denial.

The unlawfulness of an agreement "which excludes any person from employment" because of nonunion membership cannot by construction or interpretation be read to mean that the unlawfulness is cured or waived if the exclusion be limited to a period of only 48 hours.

We agree with the trial court's construction of the agreement as being in violation of Nevada's right to work act.

The trial court, then, acted with authority in granting

a preliminary injunction, and no error has been shown. Affirmed with costs.

MERRILL, C. J., and BADT, J., concur.