GUSS, DOING BUSINESS AS PHOTO SOUND PROD-
UCTS MANUFACTURING CO., *v.* UTAH
LABOR RELATIONS BOARD.

No. 280.   Argued January 16, 1957.—Decided March 25, 1957.

*Peter W. Billings* argued the cause for appellant. With him on the brief was *Harold P. Fabian.*

*E. R. Callister,* Attorney General of Utah, argued the cause for appellee. With him on the brief was *Raymond W. Gee,* Assistant Attorney General.

*Solicitor General Rankin, Theophil C. Kammholz, Stephen Leonard* and *Dominick L. Manoli* filed a brief for the National Labor Relations Board, as *amicus curiae,* urging affirmance.

A brief of *amici curiae* was filed for the States of Florida, by *Richard W. Ervin,* Attorney General; Georgia, by *Eugene Cook,* Attorney General; Texas, by *John Ben Shepperd,* Attorney General; Vermont, by *Robert T. Stafford,* Attorney General; Virginia, by *J. Lindsay Almond, Jr.,* Attorney General; Wyoming, by *George F. Guy,* Attorney General; and the Wisconsin Employment Relations Board, by *Vernon W. Thomson,* Attorney General, and *Beatrice Lampert,* Assistant Attorney General.

Briefs of *amici curiae* were also filed by *Herbert B. Cohen,* Attorney General, and *Oscar Bortner,* Assistant Attorney General, for the Commonwealth of Pennsylvania, and *Philip Feldblum* for the New York State Labor Relations Board.

*Arthur J. Goldberg* and *David E. Feller* filed a brief for the United Steelworkers of America, as *amicus curiae.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The question presented by this appeal and by No. 41, *post,* p. 20, and No. 50, *post,* p. 26, also decided this day, is whether Congress, by vesting in the National Labor

Relations Board jurisdiction over labor relations matters affecting interstate commerce, has completely displaced state power to deal with such matters where the Board has declined or obviously would decline to exercise its jurisdiction but has not ceded jurisdiction pursuant to the proviso to § 10 (a) of the National Labor Relations Act.[1] It is a question we left open in *Building Trades Council* v. *Kinard Construction Co.*, 346 U. S. 933.

Some background is necessary for an understanding of this problem in federal-state relations and how it assumed its present importance. Since it was first enacted in 1935, the National Labor Relations Act[2] has empowered the National Labor Relations Board "to prevent any person from engaging in any unfair labor practice . . . [defined by the Act] affecting commerce."[3] By this language and by the definition of "affecting commerce" elsewhere in the Act,[4] Congress meant to reach to the full extent of its power under the Commerce Clause. *Labor Board* v. *Fainblatt*, 306 U. S. 601, 606–607. The Board, however, has never exercised the full measure of its jurisdiction. For a number of years, the Board decided case-by-case whether to take jurisdiction. In 1950, concluding that "experience warrants the establishment and announcement of certain standards" to govern the exercise of its jurisdiction, *Hollow Tree Lumber Co.*, 91 N. L. R. B. 635, 636, the Board published standards, largely in terms

---

[1] 61 Stat. 146, 29 U. S. C. § 160 (a).

[2] 49 Stat. 449, as amended, 61 Stat. 136, 29 U. S. C. § 151 *et seq.*

[3] § 10 (a), 49 Stat. 453, left unchanged in this particular by the Taft-Hartley amendments, 61 Stat. 146, 29 U. S. C. § 160 (a).

[4] "The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." § 2 (7), 49 Stat. 450, left unchanged by the Taft-Hartley amendments, 61 Stat. 138, 29 U. S. C. § 152 (7).

4

of yearly dollar amounts of interstate inflow and outflow.[5] In 1954, a sharply divided Board, see *Breeding Transfer Co.,* 110 N. L. R. B. 493, revised the jurisdictional standards upward.[6] This Court has never passed and we do not pass today upon the validity of any particular declination of jurisdiction by the Board or any set of jurisdictional standards.[7]

How many labor disputes the Board's 1954 standards leave in the "twilight zone" between exercised federal jurisdiction and unquestioned state jurisdiction is not known.[8] In any case, there has been recently a substantial volume of litigation raising the question stated at the beginning of this opinion, of which this case is an example.[9]

Appellant, doing business in Salt Lake City, Utah, manufactures specialized photographic equipment for the Air Force on a contract basis. To fulfill his government contracts he purchased materials from outside Utah in an amount "a little less than $50,000." Finished prod-

---

[5] The NLRB's press release of October 6, 1950, can be found at 26 LRR Man. 50.

[6] The NLRB's press release of July 15, 1954, can be found at 34 LRR Man. 75.

[7] But see *Labor Board* v. *Denver Building & Construction Trades Council,* 341 U. S. 675, 684.

[8] Members of the Board disagreed as to the impact of the revision. See *Breeding Transfer Co.,* 110 N. L. R. B. 493, 498–500, 506–508.

[9] Among the cases in which courts have sustained state jurisdiction where the Board declines or would decline jurisdiction are *Garmon* v. *San Diego Building Trades Council,* 45 Cal. 2d 657, 291 P. 2d 1; *Building Trades Council* v. *Bonito,* 71 Nev. 84, 280 P. 2d 295; *Hammer* v. *Local 211, United Textile Workers,* 34 N. J. Super. 34, 111 A. 2d 308; *Dallas General Drivers* v. *Jax Beer Co.,* 276 S. W. 2d 384 (Tex. Civ. App.). On the other side are *Retail Clerks* v. *Your Food Stores,* 225 F. 2d 659; *Universal Car & Service Co.* v. *International Assn. of Machinists,* 35 LRR Man. 2087 (Mich. Cir. Ct.); *New York Labor Board* v. *Wags Transportation System,* 130 N. Y. S. 2d 731, aff'd, 284 App. Div. 883, 134 N. Y. S. 2d 603.

ucts were shipped to Air Force bases, one within Utah and the others outside. In 1953 the United Steelworkers of America filed with the National Labor Relations Board a petition for certification of that union as the bargaining representative of appellant's employees. A consent election was agreed to, the agreement reciting that appellant was "engaged in commerce within the meaning of Section 2 (6), (7) of the National Labor Relations Act." The union won the election and was certified by the National Board as bargaining representative. Shortly thereafter the union filed with the National Board charges that appellant had engaged in unfair labor practices proscribed by § 8 (a) (1), (3) and (5) of the Act.[10] Meanwhile, on July 15, 1954, the Board promulgated its revised jurisdictional standards. The Board's Acting Regional Director declined to issue a complaint. He wrote on July 21:

> "Further proceedings are not warranted, inasmuch as the operations of the Company involved are predominantly local in character, and it does not appear that it would effectuate the policies of the Act to exercise jurisdiction."

The union thereupon filed substantially the same charges with the Utah Labor Relations Board, pursuant to the Utah Labor Relations Act.[11] Appellant urged that the State Board was without jurisdiction of a matter within the jurisdiction of the National Board. The State Board, however, found it had jurisdiction and concluded on the merits that appellant had engaged in unfair labor practices as defined by the Utah Act. It granted relief through a remedial order. On a Writ of Review, the Utah Supreme Court affirmed the decision and order of

---

[10] 61 Stat. 140, 141, 29 U. S. C. § 158 (a) (1), (3), (5).

[11] Utah Code Ann., 1953, 34–1–1 through 34–1–15.

the state administrative agency.[12]  We noted probable jurisdiction.   352 U. S. 817.

On these facts we start from the following uncontroverted premises:

(1) Appellant's business affects commerce within the meaning of the National Labor Relations Act and the National Labor Relations Board had jurisdiction.  *Labor Board* v. *Fainblatt, supra.*

(2) The National Act expressly deals with the conduct charged to appellant which was the basis of the state tribunals' actions.   Therefore, if the National Board had not declined jurisdiction, state action would have been precluded by our decision in *Garner* v. *Teamsters Union,* 346 U. S. 485.

(3) The National Board has not entered into any cession agreement with the Utah Board pursuant to § 10 (a) of the National Act.

Section 10 (a) provides:

> "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce.   This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: *Provided, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such*

---

[12] 5 Utah 2d 68, 296 P. 2d 733.

*agency is inconsistent with the corresponding pro-*
*vision of this Act or has received a construction*
*inconsistent therewith."* (Emphasis added.)

The proviso to § 10 (a), italicized in the quotation above, was one of the Taft-Hartley amendments to the National Labor Relations Act. Timing and a reference in one of the committee reports indicate that it was drafted in response to the decision of this Court in *Bethlehem Steel Co.* v. *New York Labor Board,* 330 U. S. 767.[13] In *Bethlehem* foremen in an enterprise affecting commerce petitioned the New York State Labor Relations Board for certification as a bargaining unit. At that time the National Board was declining, as a matter of policy, to certify bargaining units composed of foremen. The Court held that the federal policy against certifying foremen's units must prevail. However, it took occasion to discuss the efforts of the two boards to avoid conflicts of jurisdiction.

"The National and State Boards have made a commendable effort to avoid conflict in this overlapping state of the statutes. We find nothing in their negotiations, however, which affects either the construction of the federal statute or the question of constitutional power insofar as they are involved in this case, since the National Board made no concession or delegation of power to deal with this subject. The election of the National Board to decline jurisdiction in certain types of cases, for budgetary or other reasons presents a different problem which we do not now decide." *Id.,* at 776.

---

[13] The *Bethlehem* decision was handed down April 7, 1947. The proviso to § 10 (a) first appeared when S. 1126, which contained the substance of what was to become the Taft-Hartley Act, was reported out of committee April 17. See S. Rep. No. 105, Pt. 2, 80th Cong., 1st Sess. 38.

Three Justices were led to concur specially, because, as it was stated for the three:

"I read . . . [the Court's opinion] to mean that it is beyond the power of the National Board to agree with State agencies enforcing laws like the Wagner Act to divide, with due regard to local interests, the domain over which Congress had given the National Board abstract discretion but which, practically, cannot be covered by it alone. If such cooperative agreements between State and National Boards are barred because the power which Congress has granted to the National Board ousted or superseded State authority, I am unable to see how State authority can revive because Congress has seen fit to put the Board on short rations." *Id.,* at 779.

Thus, if the opinion of the Court did not make manifest, the concurring opinion did, that after *Bethlehem* there was doubt whether a state board could act either after a formal cession by the National Board or upon a declination of jurisdiction "for budgetary or other reasons." When we read § 10 (a) against this background we find unconvincing the argument that Congress meant by the proviso only to meet the first problem, *i. e.,* cession of jurisdiction over cases the National Board would otherwise handle.

The proviso is directed at least equally to the type of cases which the Board might decline "for budgetary or other reasons" to hear as to the type of cases it might wish to cede to the States for policy reasons—if, indeed, there is any difference between the two classes. Cases in mining, manufacturing, communications and transportation can be ceded only where the "industry" is "predominantly local in character." In other industries, which Congress might have considered to be more or less typically local,

it put no such limitation on the Board's power. The Senate Committee spelled the matter out:

> "The proviso which has been added to this subsection [§ 10 (a)] permits the National Board to allow State labor-relations boards to take final jurisdiction of cases in border-line industries (i. e., border line insofar as interstate commerce is concerned), provided the State statute conforms to national policy." [14]

The Committee minority agreed as to the purpose of the proviso and agreed "with the majority that it is desirable thus to clarify the relations between the National Labor Relations Board and the various agencies which States have set up to handle similar problems." [15]

We hold that the proviso to § 10 (a) is the exclusive means whereby States may be enabled to act concerning the matters which Congress has entrusted to the National Labor Relations Board. We find support for our holding in prior cases in this Court. In *Amalgamated Assn. of Employees* v. *Wisconsin Board,* 340 U. S. 383, 397–398, the Court said:

> "The legislative history of the 1947 Act refers to the decision of this Court in *Bethlehem Steel Co.* v. *New York Labor Board,* 330 U. S. 767 (1947), and, in its handling of the problems presented by that case, Congress demonstrated that it knew how to cede jurisdiction to the states. Congress knew full well that its labor legislation 'preempts the field that the

---

[14] S. Rep. No. 105, 80th Cong., 1st Sess. 26.

[15] S. Rep. No. 105, Pt. 2, 80th Cong., 1st Sess. 38. The minority members also said, "We think the clarification of relations between the Federal and State boards contemplated under section 10 (a) a wise solution to a complex problem." *Id.,* at 41. See also S. Rep. No. 986, 80th Cong., 2d Sess. 30–31.

act covers insofar as commerce within the meaning of the act is concerned' and demonstrated its ability to spell out with particularity those areas in which it desired state regulation to be operative." (Footnotes omitted.)

In a footnote to the first sentence quoted above the Court cited § 10 (a) and described its authorization to cede jurisdiction only where the state law is consistent with the national legislation as insuring "that the national labor policy will not be thwarted even in the predominantly local enterprises to which the proviso applies." *Id.*, n. 23. See also *Algoma Plywood & Veneer Co.* v. *Wisconsin Board,* 336 U. S. 301, 313; *California* v. *Zook,* 336 U. S. 725, 732.

Our reading of § 10 (a) forecloses the argument based upon such cases as *Welch Co.* v. *New Hampshire,* 306 U. S. 79, and *Missouri Pacific R. Co.* v. *Larabee Flour Mills Co.,* 211 U. S. 612, that "where federal power has been delegated but lies dormant and unexercised," *Bethlehem Steel Co.* v. *New York Labor Board, supra,* at 775, the States' power to act with respect to matters of local concern is not necessarily superseded. But in each case the question is one of congressional intent. Compare *Welch Co.* v. *New Hampshire, supra,* with *Napier* v. *Atlantic Coast Line R. Co.,* 272 U. S. 605. And here we find not only a general intent to pre-empt the field but also the proviso to § 10 (a), with its inescapable implication of exclusiveness.

We are told by appellee that to deny the State jurisdiction here will create a vast no-man's-land, subject to regulation by no agency or court. We are told by appellant that to grant jurisdiction would produce confusion and conflicts with federal policy. Unfortunately, both may be right. We believe, however, that Congress has ex-

pressed its judgment in favor of uniformity. Since Congress' power in the area of commerce among the States is plenary, its judgment must be respected whatever policy objections there may be to creation of a no-man's-land.

Congress is free to change the situation at will. In 1954 the Senate Committee on Labor and Public Welfare recognized the existence of a no-man's-land and proposed an amendment which would have empowered state courts and agencies to act upon the National Board's declination of jurisdiction.[16] The National Labor Relations Board can greatly reduce the area of the no-man's-land by reasserting its jurisdiction and, where States have brought their labor laws into conformity with federal policy, by ceding jurisdiction under § 10 (a).[17] The testimony given by the Chairman of the Board before the Appropriations Committees shortly before the 1954 revisions of the jurisdictional standards indicates that its reasons for making that change were not basically

---

[16] "The effect . . . of the Board's policy of refusing to assert its jurisdiction has been to create a legal vacuum or no-man's land with respect to cases over which the Board, in its discretion, has refused to assert jurisdiction. In these cases the situation seems to be that the Board will not assert jurisdiction, the States are forbidden to do so, and the injured parties are deprived of any forum in which to seek relief." S. Rep. No. 1211, 83d Cong., 2d Sess. 18. The minority agreed that "When the Federal Board refuses to take a case within its jurisdiction, the State agencies or courts are nevertheless without power to take jurisdiction, since the dispute is covered by the Federal act, even though the Federal Board declines to apply the act. There is thus a hiatus—a no man's land—in which the Federal Board declines to exercise its jurisdiction and the State agencies and courts have no jurisdiction." *Id.*, Pt. 2, p. 14. The Committee's bill, S. 2650, was recommitted. 100 Cong. Rec. 6203.

[17] The National Labor Relations Board has informed us in its brief *amicus curiae* in these cases that it has been unable, because of the conditions prescribed by the proviso to § 10 (a), to consummate any cession agreements.

budgetary. They had more to do with the Board's concept of the class of cases to which it should devote its attention.[18]

The judgment of the Supreme Court of Utah is

*Reversed.*

Mr. Justice Whittaker took no part in the consideration or decision of this case.

Mr. Justice Burton, whom Mr. Justice Clark joins, dissenting.*

I believe the Court is mistaken in its interpretation of the proviso which Congress added to § 10 (a) of the National Labor Relations Act in 1947.[1] It is my view that the proviso was added merely to make it clear that

---

[18] Hearings before Subcommittee of House Committee on Appropriations, Department of Labor and Related Independent Agencies, 83d Cong., 2d Sess. 309, 315, 323.

*[Note: This dissenting opinion applies also to No. 41, *Amalgamated Meat Cutters* v. *Fairlawn Meats, Inc., post,* p. 20, and No. 50, *San Diego Building Trades Council* v. *Garmon, post,* p. 26.]

[1] Section 10 (a) of the National Labor Relations Act of 1935, 49 Stat. 453, was amended by the Labor Management Relations Act of 1947 by the addition of the proviso shown below:

"Sec. 10 (a) The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: *Provided,* That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this Act or has received a construction inconsistent therewith." 61 Stat. 146, 29 U. S. C. § 160 (a).

the National Labor Relations Board had the power, by making specific agreements, to cede jurisdiction to state or territorial agencies over certain labor disputes. Congress sought thereby to facilitate state cooperation in the supervision of labor practices affecting interstate commerce. The Court is not justified in interpreting this action as evidencing an unexpressed and sweeping termination of the States' pre-existing power to deal with labor matters over which the Board, for budgetary or other administrative reasons, has declined, or obviously would decline, to exercise its full jurisdiction.

The Labor Acts of 1935 and 1947 granted to the Board extensive jurisdiction over labor controversies affecting interstate commerce but neither Act required the Board to assert at all times the full measure of its jurisdiction. In each Act the first sentence of § 10 (a) "empowered," but did not direct, the Board to prevent unfair labor practices. Likewise, the first sentence of § 10 (b) granted the "power," instead of imposing the duty, to issue complaints upon receipt of appropriate charges.[2] The Board is not a court whose jurisdiction over violations of private rights must be exercised. It is an administrative agency whose function is to adjudicate public rights in a manner that will effectuate the policies of the Act. See *Amalgamated Utility Workers* v. *Consolidated Edison Co.,* 309 U. S. 261.

From the beginning, budgetary limitations and other administrative considerations have prevented the Board

---

[2] "(b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint . . . ." 49 Stat. 453, 61 Stat. 146, 29 U. S. C. § 160 (b).

14

from exercising jurisdiction over all cases in which interstate commerce was affected. Congress knew this when, in 1947, it left unchanged the discretionary language of § 10 and added the proviso to § 10 (a). Congress has consistently refrained from appropriating funds sufficient to permit the Board to entertain all complaints within its jurisdiction. In recent years Congress has repeatedly recognized the Board's jurisdictional practice.[3] In *Labor Board* v. *Denver Bldg. Council,* 341 U. S. 675, 684, this Court said that "Even when the effect of activities on interstate commerce is sufficient to enable the Board to take jurisdiction of a complaint, the Board sometimes properly declines to do so, stating that the policies of the Act would not be effectuated by its assertion of jurisdiction in that case." Courts of Appeals have approved the Board's practice[4] and none of the parties to the instant cases question it.

Unless restricted by the proviso added to § 10 (a), there is little doubt that the States have the necessary power to act in labor controversies within their borders, even when interstate commerce is affected, provided the Federal Government has not occupied the field and the National Board has not taken jurisdiction. Where the Board has

---

[3] See Report of the Joint Committee on Labor-Management Relations, S. Rep. No. 986, Pt. 3, 80th Cong., 2d Sess. 11–15; S. Rep. No. 99, 81st Cong., 1st Sess. 40; H. R. Rep. No. 1852, 81st Cong., 2d Sess. 10; Hearings before Senate Committee on Labor and Public Welfare on S. 249, Pt. 1, 81st Cong., 1st Sess. 175–177; Hearings before Senate Committee on Expenditures in the Executive Departments on S. Res. 248, 81st Cong., 2d Sess. 40, 120.

[4] *E. g., Optical Workers' Union* v. *Labor Board,* 227 F. 2d 687; *Local Union No. 12* v. *Labor Board,* 189 F. 2d 1; *Haleston Drug Stores* v. *Labor Board,* 187 F. 2d 418. See *Labor Board* v. *Indiana & Michigan Electric Co.,* 318 U. S. 9, 18–19. The Board discusses its jurisdictional practice in *Breeding Transfer Co.,* 110 N. L. R. B. 493. See also, Note, Discretionary Administrative Jurisdiction of the NLRB Under the Taft-Hartley Act, 62 Yale L. J. 116 (1952).

declined, or obviously would decline, to take jurisdiction, then federal power lies "dormant and unexercised." *Bethlehem Steel Co.* v. *New York Labor Board,* 330 U. S. 767, 775. Unless the proviso stands in their way, the States may then exercise jurisdiction since their action will not conflict with the Board's administration of the Act.[5] Substantive provisions of the Act may limit the action of the States. See *United Mine Workers* v. *Arkansas Oak Flooring Co.,* 351 U. S. 62, 75. But the States are not deprived of all power to act.[6]

By this decision the Court restricts the power of the States to those labor disputes over which the National Board expressly cedes its jurisdiction to the appropriate state agencies. However, the proviso's requirements are so highly restrictive that not a single cession has been made under it.[7] The result of this decision is the crea-

---

[5] ". . . The care we took in the *Garner* case [346 U. S. 485] to demonstrate the existing conflict between state and federal administrative remedies in that case was, itself, a recognition that if no conflict had existed, the state procedure would have survived." *United Construction Workers* v. *Laburnum Construction Corp.,* 347 U. S. 656, 665. See also, *Weber* v. *Anheuser-Busch, Inc.,* 348 U. S. 468, 479–480.

[6] See *Southern Pacific Co.* v. *Arizona ex rel. Sullivan,* 325 U. S. 761; *Terminal Railroad Assn.* v. *Brotherhood of Railroad Trainmen,* 318 U. S. 1; *H. P. Welch Co.* v. *New Hampshire,* 306 U. S. 79; *Northwestern Bell Telephone Co.* v. *Nebraska Railway Commission,* 297 U. S. 471; *Missouri Pacific R. Co.* v. *Larabee Flour Mills Co.,* 211 U. S. 612.

[7] The National Labor Relations Board in its brief filed in these cases states that—

"It should be noted here that the Board has been unable, because of the prescribed conditions, to consummate any such agreements. Congress has been aware of this situation and considered the feasibility of deleting these conditions in order to reduce the tremendous volume of cases brought before the Board. S. Rep. No. 986, Joint Committee Report, 80th Cong., 2d Sess., 31 (1948). Congress, however, has taken no action in this regard. The advocates of federal preemption argue from this post-legislative history that Congress has

tion of an extensive no man's land within which no federal or state agency or court is empowered to deal with labor controversies. It is difficult to believe that Congress, *sub silentio,* intended to take such a step backward in the field of labor relations.

The immediate occasion that led to the enactment of the proviso throws light on its proper interpretation. That occasion was this Court's decision in the *Bethlehem* case, *supra,* where it was held that a State Board did not have jurisdiction to certify a union of foremen as a collective-bargaining agency because the National Board, by asserting general jurisdiction over foremen's unions, had occupied the field.[8] Although an agreement had been negotiated between the National Board and the State Board ceding jurisdiction over certain labor matters, this Court concluded that the agreement did not cede jurisdiction over foremen's unions. Three Justices decried certain overtones they found in the opinion of the Court to the effect that the National Board lacked authority to cede jurisdiction over predominantly local labor matters

---

thereby manifested its intent to preclude State action in the absence of cession by the Board. Precisely what inference may be drawn from such Congressional inaction is, in our judgment, wholly speculative."

[8] ". . . It [the National Board] made clear that its refusal to designate foremen's bargaining units was a determination and an exercise of its discretion to determine that such units were not appropriate for bargaining purposes. *Maryland Drydock Co.,* 49 N. L. R. B. 733. We cannot, therefore, deal with this as a case where federal power has been delegated but lies dormant and unexercised.

. . . . .

". . . The federal board has jurisdiction of the industry in which these particular employers are engaged and has asserted control of their labor relations in general. It asserts, and rightfully so, under our decision in the *Packard* case, *supra* [330 U. S. 485], its power to decide whether these foremen may constitute themselves a bargaining unit. We do not believe this leaves room for the operation of the state authority asserted." 330 U. S., at 775, 776.

by agreement with state agencies. It was to clarify the power of the National Board to make such a cession that the proviso was added to § 10 (a).

While the proviso thus evidenced a congressional purpose to encourage state action, there is no indication that it was intended to wipe out, by implication, the States' recognized power to act when the National Board declined to take jurisdiction. Neither the language of the proviso nor its legislative history discloses a conscious congressional intent to eliminate state authority when the National Board has declined to act. Unequivocal legislative history would be necessary to sustain a conclusion that Congress intended such a drastic result. In the *Bethlehem* case, *supra*, the Court did not question the authority of the States to act when the Board, for budgetary or other administrative reasons, declined to exercise its full jurisdiction. The Court expressly refrained from passing on that question [9] but three Justices said that they found in the opinion of the Court a "suggestion that the National Board's declination of jurisdiction 'in certain types of cases, for budgetary or other reasons' might leave room for the State in those situations . . . ." 330 U. S., at 778.

As a matter of fact, in 1947, nearly 40 States lacked labor agencies and comprehensive labor legislation.[10]

---

[9] "The National and State Boards have made a commendable effort to avoid conflict in this overlapping state of the statutes. We find nothing in their negotiations, however, which affects either the construction of the federal statute or the question of constitutional power insofar as they are involved in this case, since the National Board made no concession or delegation of power to deal with this subject. The election of the National Board to decline jurisdiction in certain types of cases, for budgetary or other reasons presents a different problem which we do not now decide." 330 U. S., at 776.

[10] In 1947 only 11 States had comprehensive labor statutes. Of those, eight had established an administrative procedure for the adjudication of unfair labor practices while three had left these matters

Obviously, those States were ineligible to take advantage of the proviso. It is hard to imagine that Congress meant to make the proviso the exclusive channel for state jurisdiction when so many States would be automatically excluded from using it. The full mission of the proviso was to supply the National Board with express authority to cede jurisdiction over labor disputes by agreement where, as a matter of deliberate judgment, it concluded that due regard for local interests made that course desirable. The Board's jurisdictional yardsticks always have reflected its need to distribute its limited resources so as best to effectuate the policies of the Act. The Board does not "cede" jurisdiction when it declines to exercise its full jurisdiction; it merely allows the States to exercise their pre-existing authority.[11]

The Court's interpretation of the proviso is contrary to the established practice of the States and of the National Board, as well as to the considered position taken by the Board as *amicus curiae*. Congress has demonstrated a continuing and deep interest in providing governmental machinery for handling labor controversies. The creation by it of a large, unsupervised no man's land flies in the face of that policy. Due regard for our federal system suggests that all doubts on this score should be resolved in favor of a conclusion that would not leave the States

---

to conventional law-enforcement agencies—prosecuting attorneys and regular courts. See Killingsworth, State Labor Relations Acts (1948), 1–3, 111–112. Labor legislation in the other 37 States was fragmentary. Killingsworth said of these laws "that they are aimed exclusively at one or a few union practices, place few or no restrictions on employers, and do not attempt to establish a comprehensive labor relations policy." *Id.*, at 3.

[11] When in 1954 the Board revised upward its jurisdictional yardsticks, it stated that "a desire to establish broader State jurisdiction is in no wise a factor in our decision." *Breeding Transfer Co.*, 110 N. L. R. B. 493, 497.

powerless when the federal agency declines to exercise its jurisdiction. As three Justices said in the *Bethlehem* case, *supra:*

> "Since Congress can, if it chooses, entirely displace the States to the full extent of the far-reaching Commerce Clause, Congress needs no help from generous judicial implications to achieve the supersession of State authority. To construe federal legislation so as not needlessly to forbid preexisting State authority is to respect our federal system. Any indulgence in construction should be in favor of the States, because Congress can speak with drastic clarity whenever it chooses to assure full federal authority, completely displacing the States." 330 U. S., at 780.

I would sustain the jurisdiction of the respective States in these cases.