FAXON HILLS CONSTRUCTION CO., APPELLEE, *v.* UNITED
BROTHERHOOD OF CARPENTERS AND JOINERS OF
AMERICA ET AL., APPELLANTS.*

(No. 8224—Decided May 20, 1957.)

*Mr. J. Mack Swigert, Mr. Rob J. Taylor* and *Messrs. Taft,
Stettinius & Hollister,* for appellee.

*Mr. Robert A. Wilson* and *Mr. Francis X. Ward,* for appellants.

MATTHEWS, J.   This is an appeal on questions of law and
fact from a judgment for the plaintiff by the Court of Common
Pleas of Hamilton County, Ohio.

The plaintiff is engaged in the construction of buildings for
human habitation upon real estate located in the city of Cincinnati, Ohio, for which he has an option to purchase.   It contemplates building about 200 homes to sell at approximately

---

*Judgment reversed and cause remanded to Court of Appeals, 168 Ohio
St., 8.   For opinion of Court of Appeals on remand, see *post,* 33.

$30,000 each, and, in addition, 12 four-family apartment buildings. In addition to the buildings, all of which would be constructed with all modern conveniences, the plan contemplates the construction of streets, sewers, and all the facilities usually found in a flourishing suburban community. The contemplated selling price of the homes for a total of $6,000,000 would indicate that the entire cost would approximate that sum. .

The defendants are the United Brotherhood of Carpenters & Joiners of America, Local No. 2578, a labor union associated with the AFL-CIO, Ohio Valley Carpenters District Council and their officers and agents. While there is much contradiction as to details, we think it is clear that the union organizers, in the fall of 1955, conducted a campaign among the plaintiff's employees to persuade them that it would be to their advantage to organize as a Union and bargain with the plaintiff collectively on the subject of wages and working conditions and to designate it as their collective bargaining agent. So successful was its campaign that by October 4, 1955, a clear majority of the plaintiff's employees had designated the United Brotherhood of Carpenters & Joiners of America as their collective bargaining agent, and on that day the United Brotherhood notified the plaintiff of its desire to meet to begin negotiations. The plaintiff attempted to dissuade its employees, and in the process assembled the employees and requested them to sign a statement that they didn't want the Carpenters Union to act as their exclusive bargaining agent. The employees failed or refused to sign this statement, but according to an officer of the plaintiff, testifying in its behalf, assured him orally that they did not want the Carpenters Union to act as its bargaining agent. However, the employees did not revoke the authority of the Union to represent them, and, after further attempts to induce the plaintiff to negotiate, a strike was called, and on October 10, 1955, a picket line was established by the employees and this picket line was continued, manned chiefly, if not exclusively, by employees until it was enjoined by the Court of Common Pleas on July 3, 1956. The picketing was peaceable at all times. The pickets carried a banner, announcing the strike and the purpose, signed by the United Brotherhood. There is no suggestion that there was any false statement on the banner.

The plaintiff seeks an injunction restraining such picketing on the ground that, no matter how peaceable the picketing may be, it is contrary to the public policy of this state, where there is no labor dispute between the employer and his employees; and the plaintiff contends that the evidence shows that no labor dispute existed between it and its employees. We think the plaintiff's position is sound as to the public policy as to intrastate transactions, but we do not think it is correct as to the facts. We think it is clear from the evidence that the employees desired to bargain collectively through a representative of their own choosing. The plaintiff-employer did not want to bargain with its employees collectively. It wanted to deal with each employee individually as to wages, hours of service, and other working conditions. In other words, the employees wanted to negotiate on those subjects, and the employer refused. That constituted the dispute.

The plaintiff alleged and introduced evidence tending to prove that after this strike had been carried on for several months, it changed its method of conducting its construction business, whereby it arranged to have all the work done by subcontractors, and that commencing in April, 1956, it had no employees other than three supervisors. The defendants disputed the genuineness of this change. We find no evidence to indicate that the change was not genuine. By this change, the employer-employee relation was brought to an end. Therefore, notwithstanding the fact that the strike was lawful in the beginning, the contention is that its continuance uninterruptedly, in the same peaceful manner, by the former employees, would not be justified, and should be enjoined, if this court has jurisdiction under the facts of this case. Of course, the jurisdictional question takes precedence over any consideration of the merits of the case.

At the trial in the Common Pleas Court, the defendants raised the question of the jurisdiction of that court, or of any state court, to adjudicate the issues raised in this case. They contended that the parties are engaged in an activity affecting interstate commerce, and that by the National Labor-Management Relations Act, Congress had pre-empted the field and excluded the states from exercising any jurisdiction over any sub-

ject embraced within Section 8 of the National Labor-Management Relations Act, except by and with the consent of the National Labor Relations Board, conferred in the mode and manner prescribed by the National Labor-Management Relations Act. They point to 61 Stats. at L., 146, Title 29, Section 160 (a) U. S. Code, as amended in 1947, providing that:

"The board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: *Provided*, That the board is empowered by agreement with any agency of any state or territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the state or territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this subchapter or has received a construction inconsistent therewith."

This raises the question of whether there is any proof that this activity affected interstate commerce. It should be stated at once that no witness testified that any of these activities crossed a state line. On cross-examination, one of the plaintiff's witnesses testified to the extent of the enterprise, from which the defendants suggest that it could be inferred that state lines would be disregarded in the execution of the enterprise; but neither this witness, nor any other witness testified to any action that could not be performed entirely intrastate, without involving interstate commerce, either directly or indirectly. However, for purposes of its own, the plaintiff offered in evidence a written document, which its counsel described as "a charge filed by the plaintiff company with the National Labor Relations Board against the Union in this case." Counsel for defendants stipulated that this document could be introduced in evidence, and it was admitted in evidence, and marked as Exhibit 10. This exhibit is the usual printed form provided by the

National Labor Relations Board for use in filing charges of unfair labor practices, and in it the plaintiff in this case charged the defendants with maintaining this picket line for the purpose of coercing it "in violation of Section 8 (b) of the Act and with the intention of causing the employer herein to discriminate against its employees in violation of Section 8 (a)." These activities were charged to be unfair labor practices within the meaning of the National Labor Relations Act, and that these unfair labor practices are "unfair labor practices affecting commerce within the meaning of the Act."

That these allegations were essential averments of fact, essential to confer jurisdiction upon the National Labor Relations Board is clear. 41 American Jurisprudence, 342, Section 75.

The plaintiff also introduced in evidence, by agreement of defendants' counsel, Exhibit 13, showing the action of the Regional Director of National Labor Relations Board on this complaint or charge, and Exhibit 18, showing the action of the General Counsel on appeal to him from the order of the Regional Director.

The finding and order of the Regional Director was as follows: "It does not appear that further proceedings are warranted inasmuch as it would not effectuate the policies of the Act to assert jurisdiction at this time. I am therefore refusing to issue complaint at this time."

On the appeal to the General Counsel, he made the following finding and order: "The General Counsel sustains the ruling of the Regional Director. The General Counsel concludes that the company's operations do not meet the board's current standards for the assertion of jurisdiction. Accordingly, further proceedings are not warranted."

It also appears in evidence that the defendants filed charges of unfair labor practices affecting interstate commerce against the plaintiff with the National Labor Relations Board, and that it refused to assert jurisdiction over such unfair labor practices.

While the parties may have had the objective of showing by these documents that the National Labor Relations Board had declined relief to the parties, and thereby placed the contro-

versy within the jurisdiction of the states, the operation of the documents could not be so limited. Having been introduced, they were in evidence for all purposes.

Neither party during the trial retracted or modified the allegation or admission that interstate commerce was affected. They disagreed as to the meaning and effect of the action of the Regional Director and the General Counsel. The plaintiff's counsel contends that thereby the National Labor Relations Board adjudged that interstate commerce was not affected. Defendants' counsel contends that the only ruling made was that the board would not exercise its jurisdiction at that time, and that there was no ruling that it lacked jurisdiction or that interstate commerce was not affected.

It is our conclusion that a reading of the rulings of the National Labor Relations Board is sufficient to disclose that the board made no ruling as to whether interstate commerce was affected. It, at least, assumed that the averment of the parties, that it had jurisdiction, was true. Assuming that interstate commerce was involved, it resolved not to exercise its jurisdiction. If any inference should be drawn from the language used by the board, it would be that it had jurisdiction, and that interstate commerce was involved. Certainly, it does not contradict the statements of the parties that interstate commerce was affected.

The situation resolves itself to the question of the effect of the plaintiff's allegation before the National Labor Relations Board that interstate commerce was affected. It is an allegation of fact, or, at least, mixed law and fact. The plaintiff did not, in any way, contradict its statement, and it was not withdrawn, although it knew that the defendants disputed its contention that the National Labor Relations Board had adjudged that interstate commerce was not affected.

That a court of general jurisdiction must determine the facts upon which the jurisdiction of the specific case depends is clear. In *Wanzer* v. *Howland*, 10 Wis., 8, the second paragraph of the syllabus is:

"If a court have jurisdiction of the subject matter generally, and whether it has in the particular case, depends upon some

fact to be tried; and if that fact be established by a confession in the pleadings, then the jurisdiction has attached, the parties are estopped by their pleadings to inquire into the fact of jurisdiction.''

In 71 Corpus Juris Secundum, 152, Section 59a, it is said: ''The rule precluding a party from contradicting the allegations of his own pleading prevents him from contradicting his allegations of jurisdictional facts.''

A pleading, as such, may have served its purpose, but it survives indefinitely as an admission by the pleader of the facts alleged. In 31 Corpus Juris Secundum, 1075, Section 303, it is said: ''An admission in a pleading in one action may be received in evidence against the pleader * * * on the trial of another action to which he is a party * * *.''

In IV Wigmore on Evidence (3 Ed.), 54, the author says: ''That the pleadings in prior causes, then, can be treated as the parties' admissions, usable as evidence in later causes, must be conceded.''

Thus, it would seem that admissions of jurisdictional facts are conclusive in the case in which they are pleaded, but not conclusive when introduced in evidence against the pleader by his opponent in another action to which the pleader is a party. When introduced by the pleader himself, they should have as much, or greater, probative value.

Our conclusion is that the allegation must stand as an admission by plaintiff that interstate commerce was affected and as proof of a fact upon which the jurisdiction of the state court depended.

Finally, we are confronted with this case which comes within the general jurisdiction of the court as conferred by state law, capable of affording relief sought unless that jurisdiction is affected by a valid Act of Congress. The defendants point to Section 10 (a) of the Labor-Management Relations Act, already quoted.

At the time of the trials in this case, the meaning of Section 10 (a), and its effect upon the jurisdiction of state courts had not been fully disclosed by the decided cases. The subject had been noticed in several cases decided by the Supreme Court,

but no case had been presented that had been recognized as involving the question of whether Section 10 (a) of the Labor-Management Relations Act did not per se exclude state jurisdiction over unfair labor practices as defined in Section 8 of that Act. In *Grimes & Hauer, Inc.,* v. *Pollock,* 163 Ohio St., 372, 127 N. E. (2d), 203, the Supreme Court of Ohio, following *Garner* v. *Teamsters, Chauffeurs & Helpers Local Union No. 776,* 346 U. S., 485, 98 L. Ed., 228, 74 S. Ct., 161, held that Section 10 (a) excluded state jurisdiction over unfair labor practices as defined in Section 8, but in that case, and in the *Garner case,* there had been no refusal by the National Labor Relations Board to assume jurisdiction and this fact was noticed in the opinion, where it is said: ''In the event this controversy should ultimately be taken before the National Labor Relations Board, and that agency should decline to entertain the matter another question might arise with which we have no concern here.''

The question which was not present in the *Grimes & Hauer case* did arise in three cases decided by the Supreme Court of the United States while the case at bar was under submission in this court. They were decided on March 25, 1957. The first case is that of *Guss* v. *Utah Labor Relations Board,* 353 U. S., 1, 1 L. Ed. (2d), 601, 77 S. Ct., 598, Chief Justice Warren, who spoke for the court, stated the question presented in these words:

''The question presented by this appeal and by No. 41, *post,* p. 20, and No. 50, *post,* p. 26, also decided this day, is whether Congress, by vesting in the National Labor Relations Board jurisdiction over labor relations matters affecting interstate commerce, has completely displaced state power to deal with such matters where the board has declined or obviously would decline to exercise its jurisdiction but has not ceded jurisdiction pursuant to the proviso to Section 10 (a) of the National Labor Relations Act. It is a question we left open in *Building Trades Council* v. *Kinard Construction Co.,* 346 U. S., 933.''

In the *Guss case* there was a finding that plaintiff was engaged in interstate commerce. The defendant had presented a charge of unfair labor practice to the National Labor Relations Board and it had declined to issue a complaint on the ground

that the operation was "predominantly local in character, and it does not appear that it would effectuate the policies of the Act to exercise jurisdiction."

Thereupon, the defendant filed a complaint with the Utah Labor Relations Board listing substantially the same unfair labor practices. Its jurisdiction was challenged by the employer. The board sustained its jurisdiction and found the employer guilty of unfair labor practices. This was affirmed by the Supreme Court of Utah. The appeal was from that judgment to the Supreme Court of the United States. The Supreme Court of the United States reversed the judgment, and held that, notwithstanding the National Labor Relations Board had declined to exercise jurisdiction, Section 10 (a) excluded state jurisdiction.

Speaking of the effect of its interpretation of Section 10 (a), the court said:

"We are told by appellee that to deny the state jurisdiction here will create a vast no-man's-land, subject to regulation by no agency or court. We are told by appellant that to grant jurisdiction would produce confusion and conflicts with federal policy. Unfortunately, both may be right. We believe, however, that Congress has expressed its judgment in favor of uniformity. Since Congress' power in the area of commerce among the states is plenary, its judgment must be respected whatever policy objections there may be to creation of a no-man's-land."

The next case, decided on March 25, 1957, was *Amalgamated Meat Cutters & Butchers Workmen of North America, Local No. 427*, v. *Fairlawn Meats, Inc.*, 353 U. S., 20, 1 L. Ed. (2d), 613, 77 S. Ct., 604, which was an appeal from the judgment of the Ohio Supreme Court dismissing an appeal from the Court of Appeals of the Ninth Appellate District. The only substantial difference between the two cases which we need to notice here is that, in the first case, the state acted through the Utah Labor Relations Board, an administrative agency, and, in the second case, the state acted through its judicial department. The Supreme Court of the United States declared that the distinction was without a difference. The court said: "On this

view of the case, our decision in *Guss* v. *Utah Labor Relations Board, ante,* p. 1, controls. If the proviso to Section 10 (a) of the National Labor Relations Act operates to exclude state labor boards from disputes within the National Board's jurisdiction in the absence of a cession agreement, it must also exclude state courts.''

There was another distinguishing fact in that case. This was the fact that the Court of Appeals had enjoined trespassing upon the private property of the plaintiff. The Supreme Court of the United States refused to pass upon the power of the state court to enjoin a trespass committed while engaged in an unfair labor practice because it said that ''the unitary judgment of the Ohio court was based on the erroneous premise that it had power to reach the union's conduct in its entirety.''

The third case decided by the Supreme Court of the United States on March 25, 1957, was *San Diego Building Trades Council* v. *Garmon,* 353 U. S., 26, 1 L. Ed. (2d), 618, 77 S. Ct., 607. In that case picketing to compel employer to sign a union shop agreement was accompanied by violence. The Union had not been designated as the bargaining agent by the employees, and the picketing, for that reason, was an unfair labor practice. The state court enjoined the picketing. This was reversed by the Supreme Court of the United States on the authority of the two cases decided on the same day. As to the award of damages for the violent conduct, the Supreme Court said the record was not clear and remanded the case for further proceedings not inconsistent with the opinions in *Guss* v. *Utah Labor Relations Board* and *Amalgamated Meat Cutters & Butchers Workmen of North America, Local No. 427,* v. *Fairlawn Meats, Inc., supra.*

Having found that this record shows that the defendants' activities affect interstate commerce and are unfair labor practices as defined in Section 8 of the National Labor Relations Act, the interpretation placed upon that Act by the Supreme Court of the United States constitutes the supreme law of the land and is, of course, binding upon this court. We are, therefore, constrained to hold that Section 10 (a) of that Act deprives the state's court of jurisdiction over the subject matter.

Judgment is rendered in this court dismissing this action for want of jurisdiction of the subject matter at plaintiff's costs, and the cause is remanded for the enforcement of the judgment.

*Judgment accordingly.*

HILDEBRANT, P. J., concurs.

LONG, J., dissenting. I agree with the majority of the court that under Ohio law there was a real labor dispute on the facts, as developed below and in this court. See cases cited by majority. There is, however, no rational basis to conclude from recent Supreme Court cases that where the National Labor Relations Board has refused to exercise its jurisdiction, Section 10 (a) of the National Labor-Management Relations Act operates to exclude jurisdiction from the courts of the states. The rule is axiomatic: where transactions of a commercial nature do not affect interstate commerce, or where it has not been proved that interstate commerce has been affected, the Congress of the United States has no constitutional authority to control such transactions of a commercial nature.

The immediate problem is raised as to whether appellee's business of realty construction permeates interstate commerce. The majority finds that the procedural steps taken before the National Labor Relations Board, wherein the plaintiff alleged it was involved in interstate commerce, is an irrevocable admission, one which is conclusive upon that issue. Whether such is the case depends upon the law of Ohio regarding evidence and factual admissions and conclusions of law. The allegation of jurisdiction or lack of it is a conclusion of law. 31 Ohio Jurisprudence, 562, Pleading, Section 25. 21 Ruling Case Law, 442, Section 5. As a conclusion of law, it is not binding upon a party as an admission of fact against interest. *Abbott, Admx.,* v. *Cocke,* 29 Ohio Law Abs., 504; 21 Ohio Jurisprudence (2d), 328, Evidence, Section 315. In my opinion, therefore, a necessary allegation of jurisdiction, that appellee was engaged in interstate commerce, is not operative against appellee as an estoppel, as the majority would have it. As far as its proba-

tive value is concerned, any presumption the allegation might raise is more than rebutted by the Regional Board's statement that "the company's *operations* do not meet the board's current standards for the assertion of jurisdiction." The use of "*operations*" indicates to me that appellee's business did not affect interstate commerce sufficiently to have the labor board exercise its jurisdiction over the case.

Of course, what the labor board's *standards* may or may not be is not legally determinative of the fact of interstate commerce. The final authority on this issue is the United States Supreme Court. For the purposes of this case, however, the necessity of proving an effect on interstate commerce to be already existing has not been met by the appellant who had the burden of proving its assertion of lack of jurisdiction in the Ohio courts. Indeed, I have found no case in which evidence has not been adduced to show the past and existent effect on interstate commerce of a party's business; on the contrary, I draw the conclusion that such evidence is necessary, and that any evidence as to prospective effect is of no legal value. Such has been the import of cases such as *Guss* v. *Utah Labor Relations Board,* 353 U. S., 1, 1 L. Ed. (2d), 601, 77 S. Ct., 598, and *Amalgamated Meat Cutters & Butchers Workmen of North America, Local No. 427,* v. *Fairlawn Meats, Inc.,* 353 U. S., 20, 1 L. Ed. (2d), 613, 77 S. Ct., 604, both decisions of the Supreme Court, and both extremely pertinent to this case.

The court in the *Guss case* stated:

"On these facts we start from the following uncontroverted premises:

"(1) Appellant's business affects commerce within the meaning of the National Labor Relations Act and the National Labor Relations Board had jurisdiction. *Board* v. *Fainblatt, supra* [306 U. S., 601]."

The court thus imposed jurisdiction as far as "commerce" is concerned after the regional labor board had found the appellant's activities too local to warrant an exercise of jurisdiction. But the *Guss case* did present facts showing the already existing effect on interstate commerce.

The "no-man's-land" situation should not apply in this

case because of the failure to show even a *de minimis* effect on interstate commerce. Until such—or sufficient—effect is shown in a case, I do not believe that Section 10 (a) has any bearing upon the jurisdiction of Ohio courts involving disputes under the Taft-Hartley Act.