Tom E. ANGELL, Sr., et al., D/B/A Tom Angell Lathing and Plastering Contractors, Appellants,

v.

WOOD, WIRE AND METAL LATHERS INTERNATIONAL UNION et al., Appellees.

No. 15970.

Court of Civil Appeals of Texas.

Fort Worth.

May 1, 1959.

Rawlings, Sayers, Scurlock & Eidson, and Allen P. Schoolfield, Jr., Fort Worth, for appellants.

Sam Houston Clinton, Jr., Austin, for appellees.

MASSEY, Chief Justice.

The primary question posed on this appeal is whether or not, in an instance where a union engages in alleged unfair labor practices other than violent, etc., and not involving secondary boycott, to the damage of an employer, the employer can maintain a suit for damages in the state courts without first seeking to invoke the jurisdiction of the National Labor Relations Board.

Parties to the case have stipulated that the businesses involved or alleged to be affected by the labor practices involved are in or affect commerce, and that the issue is one of law based upon the pleadings.

■ It is to be remembered that under the Labor Management Relations Act of 1947, or the Taft-Hartley Act, 29 U.S.C.A. § 141 et seq., the National Labor Relations Board has no jurisdiction to assess damages in this type of case. The Board's jurisdiction, when properly invoked, is of an equitable nature only. Had the employer here involved filed a complaint with the Board the relief it could grant would only have been to issue a cease and desist order preventing further practices by the union of the nature complained of.

The practices of which the employer complained consisted in part in peaceful

picketing as the result of all or some of the defendant unions placing a picket sign at the premises of a school job where the employer had a sub-contract under the general contractor responsible for construction. The sign stated: "Lathers Local Union 230 and Plasterers Local Union 34 Protesting Working Conditions and Wages Paid by Tom Angell Lathing and Plastering Contractors. AFL-CIO." Such picketing and posting of the sign in question had ceased prior to the time suit for damages was filed. By way of conclusions the employer complained in the petition filed in the trial court that the "defendants still refuse to allow said job to continue through defendants' influence with other local craft unions", and that the "defendants have unlawfully and illegally interfered with the contract relationship" between employer and the general contractor with whom it had contracted, and "are continuing to interfere with future opportunities for plaintiff to obtain contracts on other construction projects. * * * and are attempting to deprive plaintiff of the right to seek gainful employment and pursue lawful enterprise in violation of the Constitution and public policy of the State of Texas." Allegations of injury and damages resulting through the wrongful acts complained of followed.

■ Under section 160(b), "Unfair Labor Practices—Prevention", we find that the Board does not ordinarily have the authority to issue a complaint based upon any alleged unfair labor practice which occurred more than 6 months prior to the filing of the charge thereof with the Board. The exception is specifically made for members of the armed forces who are prevented from complaining by reason of service therein. It necessarily follows that the Board has jurisdiction to decide whether a labor practice complained of was "fair" or was "unfair" even after the practice has been discontinued, but that after it has ceased to occur its jurisdiction cannot be invoked after the expiration of six calendar months.

■ In the instant case the suit filed against the unions came within this period. Furthermore, the hearing and the judgment dismissing the suit all took place prior to the expiration of six months from the date the practices complained of first began. Of course, our appellate jurisdiction tests the propriety of the action of the lower court as of the date of its action.

■ It is clear and undisputed that the practices complained of in this case would unquestionably have been within the jurisdiction of the Board upon a charge presented to it by the employer. That is, the Board's jurisdiction could have been invoked to exercise its powers in equity and to make a finding pursuant to prescribed procedure either that the practices complained of were "fair" or were "unfair". Of course, the Board might decline to exercise its powers once its jurisdiction was invoked, or, upon an attempt to invoke its jurisdiction, the Board might hold that it was without jurisdiction. Under section 160(a), "Unfair Labor Practice—Prevention", the Board might, upon agreement therewith, cede its jurisdiction to state agencies except as to disputes arising in certain industries—unless said industries were predominantly local in character. This is the exclusive means whereby States may be enabled to act concerning the matters which Congress has entrusted to the National Labor Relations Board. Guss v. Utah Labor Relations Board, 1957, 353 U.S. 1, 77 S.Ct. 598, 609, 1 L.Ed.2d 601.

■■ Of course it must be recognized that in instances where the practices of a union result to the prejudice of an employer, no cause of action for damages will lie because thereof if such practices are "fair". It would only be when such practices are "unfair" that action for damages will lie. Where, upon judicial hearing, the practices may be found one way or the other we are of the opinion that there would be no way to "by-pass" the National Labor Relations Board, avoiding an ad-

judication of the fairness or unfairness of the practices by that body, through an abandonment of any resort to a plea for equitable relief.

If procedure here attempted by the employer should be allowed the system provided by the Federal Act would be possible of circumvention in a very great number of instances, and the objectives intended to be accomplished by the Act could be defeated in proportion thereof. Rather than a more or less uniform standard over the entire country by which labor practices may be determined to be "fair" or "unfair" we would have differing opinions and judicial declarations in the various jurisdictions, and indeed varying decisions within a single state. Therefore we believe the "prerequisite", i. e., determination of "fairness" or "unfairness", whether relief be sought in law or in equity, must remain with the Federal Board where its jurisdiction has not been ceded. In other words, it must be the Board which determines whether the practices in question are "fair" or "unfair". After such determination either or both remedies might be available.

At the time this case was submitted the United States Supreme Court had not rendered its decision in the case of San Diego Building Trades Council v. Garmon. It had the case under consideration after the decision of Garmon v. San Diego Building Trades Council, 1958, 49 Cal.2d 595, 320 P.2d 473. This was the second time the case was in the Supreme Court. Its decision in the first instance was San Diego Building Trades Council v. Garmon, 1957, 353 U.S. 26, 77 S.Ct. 607, 609, 1 L.Ed.2d 618,—as a companion case to Guss v. Utah Labor Relations Board, supra.

On the second occasion the Garmon case was before the court on the matter of the propriety of a judgment for damages alone rendered in a state court and upheld by the state's appellate courts. Premise for such judgment was not to be distinguished from the relief sought by the employer in the instant case, except for the fact that in the Garmon case the employer affected by the labor practices of a union did first seek to invoke the jurisdiction of the National Labor Relations Board. Such Board refused to take jurisdiction. In said case, as in this before us, there had been no cession of the Board's jurisdiction to the state or agency thereof. The United States court dealt only with the matter of injunctive relief when the case was first before it, and, under the state of the record before it at the time expressly declined to deal with the propriety of the judgment for damages. On the second occasion, however, the propriety of judgment in that respect was the sole question to be resolved.

We have been furnished a copy of the opinion (authored by Justice Frankfurter) handed down by the Supreme Court in the Garmon case under date of April 20, 1959, 79 S.Ct. 773, which holds that under the circumstances of the case the State's jurisdiction is displaced and that therefore the judgment for damages granted by the California courts must be reversed.

■ It is noted from the concurring though somewhat critical opinion of Justice Harlan that the majority opinion has established it to be the law that henceforth the States must withhold access to their courts until the National Labor Relations Board has determined that unprotected conduct is or is not an unfair labor practice, a course which, because of unavoidable delays, may render state redress ineffective. Further, that in instances in which the Board declines to exercise its jurisdiction, the States are entirely deprived of power to afford any relief. Still further, that since the reparation powers of the Board are narrowly circumscribed, those injured by nonviolent conduct will often go remediless even when the Board does accept jurisdiction.

The Supreme Court's opinion (April 20, 1959), though in a great deal more detail, arrives at the result upon which its hold--

ing is predicated for the same reasons as our own in material degree. The minor additional reasons persuading our like conclusion and holding do not in our minds contradict anything in the opinion of Justice Frankfurter. There has been a prior decision in Texas to the same effect. Bearden v. Coker, Tex.Civ.App. Amarillo 1956, 291 S.W.2d 790, writ ref., n. r. e.

Judgment of dismissal is affirmed.