PUERTO RICO TELEPHONE COMPANY, Petitioner, *v.* LABOR RELATIONS BOARD ET AL., Respondents.

No. 74. Decided November 5, 1962.

_____

*Sifre, Ruiz-Suria & Sifre* for petitioner. *J. B. Fernández Badillo*, Solicitor General, *José Orlando Grau*, and *Rafael Buscaglia, Jr.*, for the Labor Relations Board.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Scarcely a decade ago in *Labor Rel. Board* v. *I.L.A.*, 73 P.R.R. 568, 579–97 (1952), we ratified the power of the Legislative Assembly of Puerto Rico, in the exercise of its police power, to regulate the violation of a collective bargaining agreement as an unfair labor practice. To that effect we said that the exclusiveness of jurisdiction recognized to the National Labor Relations Board is limited, under the very terms of the law on the matter, to the scope of the activities protected and the unfair labor practices listed therein, and that the field of violation of collective bargaining agreements, not being regulated by federal but by local legislation, there is no question whatsoever of jurisdiction—exclusive or not—of the National Board to grant any relief to prevent violations of those agreements.[1] We have uniformly followed and cited

---

[1] In *Asoc. Empl. Bayamón Transit* v. *Labor Rel. Board*, 70 P.R.R. 273 (1949), we had already said that the State Board had jurisdiction only where (1) the employer commits an unfair labor practice or engages in some other conduct not listed in the Federal Act but which is included in the local Act; (2) the employer's business is exempt under the Federal Act but is subject to the Insular Act; and (3) the National Board cedes

this norm with approval. *Labor Relations Board* v. *I.L.A.*, 76 P.R.R. 777 (1954); *Labor Relations Board* v. *Quiñones*, per curiam (decided November 12, 1954); *Labor Relations Board* v. *Simmons Int'l Ltd.*, 78 P.R.R. 360 (1955); *Labor Relations Board* v. *Ortega*, 79 P.R.R. 714, 716 (1956); *cf. Asoc. de Guardianes* v. *Bull Line*, 78 P.R.R. 680 (1955). Relying on the decisions of the Federal Supreme Court in *Guss* v. *Utah L.R.B.*, 353 U.S. 1 (1957), and *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236 (1959), we are urged to re-examine the former doctrine and to uphold the absolute hegemony of the Federal Act in the case of an industry engaged in interstate commerce.

# I

## THE FACTS

On October 26, 1959 the Unión de Empleados de la Industria del Teléfono, Sindicato de Trabajadores, UPWA-AFL-CIO, filed a complaint against the Puerto Rico Telephone Company alleging that it was and is engaged in the unfair labor practice defined in § 8(1) (*f*) of the Labor Relations Act of Puerto Rico, No. 130 of May 8, 1945, 29 L.P.R.A. § 69(1) (*f*), consisting in that since July 9 last "it violated and is still violating the terms of art. XV, § 5(b)[2] of the collective bargaining agreement in refusing to meet with the

---

jurisdiction to our Board pursuant to the provisions of § 10(*a*) of the Taft-Hartley Act.

[2] Article XV of the Collective Bargaining Agreement, which provides the procedure for handling complaints, provides in its § 5 as follows:

"(a) If an employee believes that his suspension or layoff is unfair, he must submit his complaint to the Union.

"(b) If the Union is also of the opinion that the employee's suspension or layoff is unfair, it shall file a written complaint within three (3) days following the suspension or notice of the employee's layoff with the Industrial Relations Director of the Company.

"(c) The Company shall have the right to call a special meeting of the Complaints Committee to decide the complaint.

"(d) After the expiration of the period of three (3) days following the suspension or notice of the employee's layoff, the Union may not submit a complaint regarding such suspension or notice of layoff and the case shall be deemed closed.

Complaint and Grievance Committee to discuss the case of Blanca Mounier, who was laid off from work." Respondent was served with notice of the corresponding complaint, which was finally amended on December 17 of that year in order to base the charge of violation of the terms of the collective bargaining agreement not only on the refusal to meet with the Grievance Committee, but also on the Company's failure to give one week's advanced notice of the layoff to the Union and to the employee, as required by par. 3 of art. XX of the agreement.[3] Among the facts stated it was alleged that the employee had been "laid off" from her employment on July 7 and that notice thereof was served upon the Union on the same date.

The Company answered the complaint and affirmatively alleged that the discharge had taken place on June 22 and that notice thereof was served upon the Union "on or about that date"; it admitted its failure to give one week's advanced notice of the layoff to the Union and to the employee, but alleged that art. XX of the agreement was applicable only to cases of layoff, not to discharges. It set up three special

---

"(e) Any employee who has been suspended or laid off and whose suspension or layoff is found to be unfair in the opinion of the Complaints Committee shall be reinstated in his former job without detriment to his seniority rights, and the Company shall be bound to pay him the money which he has failed to earn during his suspension or layoff."

[3] Article XX reads:

"SENIORITY. Seniority shall be the total period of services accredited to an employee working for the Company, as shown in the Company records.

"In the case of promotions and layoffs and of the existence of the same conditions, seniority shall prevail; however, such seniority shall not limit the Company's rights to promote or retain in its employment an employee who, in the opinion of the Company, has greater ability, competence or efficiency, and a better service record, but who has fewer years of service.

"In the case of layoffs the Company shall give one week's prenotice to the Union and to the employee. Should the Union be disagreed with some layoff, it may submit its viewpoints to the Company for consideration and resort to any procedure established hereunder."

defenses, to wit: (1) that the Board lacked jurisdiction to take cognizance of the case, since the National Labor Relations Board had exclusive jurisdiction; (2) closely connected with the preceding contention, that the employee concerned had filed on September 15 before the National Board a charge of unfair labor practice against the Company for discriminating discharge due to union activities,[4] "which for all purposes substantially involves the same facts alleged in the amended complaint in this case," and that in connection therewith the Regional Director refused to file a formal complaint after conducting the proper investigation,[5] wherefore complainant had filed a petition for review with the National Board which is pending decision;[6] and (3) that the Union had failed to comply with the provisions of art. XV of the agreement, since it had not filed the corresponding complaint within three days following the employee's layoff.

During the hearing held before the examiner designated by the State Board, the controversy in connection with the facts hinged mainly on the character of the employee's removal from work, whether discharge as maintained by the Company, or layoff as maintained by the Union, and the date it took place. It is admitted that respondent refused to meet with the Grievance Committee in order to discuss the case of employee Mounier. Regarding these points, the Board finally determined that it was a layoff and that the same was ordered on July 7, wherefore the Union's petition which was notified two days later was timely.

---

[4] Section 8(a)(1)(3) of the National Labor Relations Act, 29 U.S.C. § 158.

[5] The determination of the Regional Director of October 22 refusing to file a complaint alleged that "the evidence...does not support the charge filed...that it discriminated...for membership or participation in activities of or in favor of a labor organization."

[6] On January 7, 1960 the General Counsel of the National Board upheld the determination of the Regional Director. Since the hearing had already been held before the examiner designated by the State Board, the parties stipulated this fact by a writing to that effect.

Consequently, after dismissing the challenge of its jurisdiction the Board held that respondent had violated the existing collective agreement, as respects art. XV, in refusing to meet with the Grievance Committee, and as respect art. XX, in failing to give one week's advanced notice of the layoff to the Union and to the employee. Under the authority of § 9(1)(*b*) of the Act, 29 L.P.R.A. § 70(1)(*b*), the Puerto Rico Telephone Company was ordered on June 17, 1960:

"1. To cease and desist from:

"(a) Violating in any manner whatsoever the terms of the collective bargaining agreement which it signed or may sign with Unión de Empleados de la Industria del Teléfono, Sindicato de Trabajadores, UPWA-AFL-CIO, or with any other labor organization of its employees, including arts. XV and XX, entitled, respectively, 'Complaints Procedure' and 'Seniority.'

"2. To take the following affirmative action which in our opinion effectuates the purposes of the Act:

"(a) At the Union's request, to submit to the Complaints Committee the case of employee Blanca Rosa Mounier de Martínez for consideration, review, and decision, pursuant to the pertinent articles of the collective agreement.

"(b) To post in conspicuous places of its premises to which its employees may have access, for a period of not less than thirty (30) days, the Notice to All Our Employees which is attached to and forms part of this Decision and Order, and to send copy thereof by registered mail to the Unión de Empleados de la Industria del Teléfono, Sindicato de Trabajadores, UPWA-AFL-CIO.

"(c) To serve notice upon the Chairman of the Board, within ten (10) days following the date of the order, of the action taken to comply with the order."

By the petition authorized under § 9(2)(*b*) of the Act, 29 L.P.R.A. § 70(2)(*b*), respondent requested this Court to review the order copied, and after reproducing the jurisdictional question raised, it alleges that the evidence introduced does not support the Board's findings to the effect that (a) it violated art. XX of the agreement in laying off

employee Mounier; (b) such layoff took place on July 7, 1959; and (c) under art. XV of the agreement it was under the obligation to meet with the Union at the latter's request within the term fixed therefor.

## II
### THE JURISDICTIONAL QUESTION

1. In *Guss* v. *Utah L.R.B.*, 353 U.S. 1; *Amalgamated Meat Cutters* v. *Fairlawn Meats*, 353 U.S. 20, and *San Diego Bldg. Trades* v. *Garmon*, 353 U.S. 26, decided March 25, 1957, the Federal Supreme Court held that a state was without power to interfere in matters within the jurisdiction of the National Labor Relations Board even though the latter declined to exercise it, unless it had expressly ceded jurisdiction pursuant to § 10 (a) of the Act, 29 U.S.C. § 160 (a). Thus, the scope of the decisions rendered in *Garner* v. *Teamsters Union*, 346 U.S. 485 (1953), and *Weber* v. *Anheuser-Busch*, 348 U.S. 468 (1955), which had established the need for uniformity, not only of the substantive norms in the federal labor law but also in the administration thereof, was extended even further. It may be observed at first blush that the *Guss*, *Fairlawn Meats*, and *San Diego Bldg. Trades* cases are distinguishable from the question under consideration, since this case does not involve a situation in which the National Board declines to exercise jurisdiction, but because, it being a violation of the collective agreement, it is without jurisdiction since, as stated hereinabove, such violation does not constitute an unfair practice under the Federal Act.

The immediate result of these decisions was to create an area denominated "no-man's land" which called for congressional action consisting in the addition of subd. (c) to § 14 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 164, authorizing the Board to decline jurisdiction in "labor disputes"[7] involving any class or

---

[7] On the interpretation of the term "labor disputes" employed in subd. (c) of § 14, see HANLEY, *Federal-State Jurisdiction in Labor's No Man's Land: 1960*, 48 Geo. L. J. 709, 711–12 (1960).

category of employees where, in its opinion, the effect thereof on commerce is not substantial; providing, further, that in these cases "nothing herein shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands) from assuming and asserting jurisdiction." The practical effect of this amendment was not to restrict the jurisdiction which the state agencies already had—as, for example, in the field of violation of agreements—but to enlarge the same in order to grant it in those cases in which the National Board declined—mostly for reasons of budgetary limitations—to assume it.[8]

■ However, petitioner contends that since at the time of instituting the proceeding before the State Board the complaint which the aggrieved employee had filed with the National Board was pending final disposition, the local agency could not take cognizance of the matter. The entire framework of its theory rests on its contention that the facts involved in both charges "are the same." From a brief examination of the situation it may be seen that this theory is rather weak. Although it is true that the discharge or layoff of the employee concerned is the common starting point, the charge filed with the National Board refers to the discriminating character of the discharge, while the unfair practice charged before the State Board arises after the discharge or layoff and as a result of another action of the employer, its refusal to submit the layoff to arbitration, as provided in the agreement. There is not even imbrication; there is no jurisdictional conflict. *Cf. United Electrical R & M Wkrs.* v. *Worthington Corp.*, 236 F.2d 364 (C.A. 1, 1956); *United Electrical R & M Wkrs.* v. *General Electric Co.*, 231 F.2d 259 (C.A. D.C. 1956); *McAmis* v. *Pandhandle Eastern Pipe Line Company*, 273 S.W.2d 789 (Mo. 1954).

---

[8] Regarding the proper time for state agencies or courts to take jurisdiction, there are different criteria: 48 Geo. L. J. 709, 734 (1960); 58 Mich. L. Rev. 288 (1959); 6 Vil. L. Rev. 80, 83 (1960).

See DUNAU, *Contractual Prohibition of Unfair Labor Practices: Jurisdictional Problems*, 57 Col. L. Rev. 52 (1957); WELLINGTON, *Labor and the Federal System*, 26 U. Chi. L. Rev. 542 (1959).

■ The Company further contends that the refusal to meet with the Union in the Grievance Committee constitutes a refusal to bargain, which is in turn an unfair practice under § 8(*a*)(5) of the Federal Act, 29 U.S.C. § 158(*a*)(5). It is true that under certain circumstances—namely, where an employer disregards completely a reasonable demand of the union to submit to the arbitration or complaints and grievances procedure a dispute involving the modification, interpretation, or enforcement of the agreement without giving any reason to justify its refusal—the desire to act unilaterally and not to bargain is evident, *N.L.R.B.* v. *Sands Manufacturing Co.*, 306 U.S. 332 (1939); *United Telephone of the West*, 112 N.L.R.B. 779 (1955); *Carroll's Transfer Co.*, 56 N.L.R.B. 935 (1944). However, in the instant case we do not face a problem requiring consideration of questions on the modification, interpretation, or administration of the agreement, but merely of adjudication by a grievance committee as to whether or not the layoff of employee Mounier was justified. *Luce & Co.* v. *Labor Relations Board, post,* p. 402; *N.L.R.B.* v. *Wooster Division of Borg-Warner Corp.,* 356 U.S. 342 (1958); *International Ladies' Garment* v. *N.L.R.B.,* 280 F.2d 616 (C.A.D.C. 1960), *aff'd,* 366 U.S. 731 (1961). The best proof of this is that the Company contended at all times that the Grievance Committee could not intervene in the matter because the notice to that effect served by the Union was untimely. Furthermore, as a matter of fact, the Company and the Union held several meetings aimed at solving the problem of the employee's layoff, and, as the Industrial Relations Director of the employer admitted, attempt was made to employ her in other departments of the Company.

2. When it is clear or it may fairly be presumed that the activities which a state purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due recognition of the federal enactment requires that state jurisdiction must yield. And if an activity is arguably subject to § § 7 or 8 of the Act, the state as well as the federal courts must yield to the exclusive primary competence of the National Board in order to avert possible conflicts of interpretation in the application and administration of the national labor policy. *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236, 244 (1959) ; *Marine Engineers* v. *Interlake Co.*, 370 U.S. 173 (1962) ; *No Man's Land and Section 701(a)*, 6 Vil. L. Rev. 80 (1960) ; McCoid, *A Study of the "No Man's Land" of Labor Law*, 44 Minn. L. Rev. 205 (1959). Thus, the state regulation has been accepted when the activity was a merely peripheral concern [9] of the Federal Act, or when the regulated conduct touched interests so deeply rooted in local feeling (especially when the activity involves the use of violence or

---

[9] As to what constitutes an activity of merely peripheral concern of the Federal Act, see *Mine Workers* v. *Arkansas Oak Flooring Co.*, 351 U.S. 62 (1956)—strike for the purpose of obtaining recognition as proper representation for collective bargaining; *N.L.R.B.* v. *Borg-Warner Corp.*, 356 U.S. 342, 349–50 (1958) ; *Youngdahl* v. *Rainfair, Inc.*, 355 U.S. 131 (1957) ; *Bus Employees* v. *Wisconsin Board*, 340 U.S. 383 (1951)—strike demanding better conditions in the terms of a collective agreement; *Plumbers Union* v. *Door County*, 359 U.S. 354 (1959) ; *Hotel Employees Union* v. *Sax Enterprises, Inc.*, 358 U.S. 270 (1959) ; *Garner* v. *Teamsters Union*, 346 U.S. 485 (1953)—peaceful strike; *Freeman* v. *Retail Clerks Union—Local No. 1207*, 363 P.2d 803 (Wash. 1961), commented in 48 Va. L. Rev. 133 (1962)—peaceful picketing; and, in general, *Waxman* v. *Commonwealth*, 123 S.E.2d 381 (Va. 1962), reversed in 371 U.S. 4 (1962) citing the *Garmon* case, 31 L.W. 3115; *De Veau* v. *Braisted*, 363 U.S. 144 (1960), criticized in 46 Minn. L. Rev. 437 (1961) ; *Teamsters Union 24* v. *Oliver*, 358 U.S. 283 (1959) ; *International Ass'n of Machinists* v. *Gonzáles*, 356 U.S. 617 (1958) ; *Hill* v. *Florida*, 325 U.S. 538 (1945) ; *General Electric Co.* v. *Callahan*, 294 F.2d 60 (C.A. 1, 1961) ; commented in 110 U. Pa. L. Rev. 620 (1962) ; *Local 248, U.A.W.* v. *Wisconsin Employment Relations Bd.*, 105 N.W.2d 271 (Wis. 1960), *cert. denied*, 365 U.S. 878 (1961), commented in Wis. L. Rev. 166 (1962). Michelman, *State Power to Govern Concerted Employee Activities*, 74 Harv. L. Rev. 641 (1961).

is of a criminal nature) that, in the absence of compelling congressional direction, we could not infer that Congress has deprived the States of the power to act. *San Diego Bldg. Trades Council* v. *Garmon, supra* at 243–44. In order that the state jurisdiction may yield, it is therefore necessary that the activity be protected by § 7 or that it constitute an unfair practice as defined in § 8 and, as we have seen, such is not the case of violation of an agreement. We must bear in mind that federal preemption depends on the type of conduct involved and not on the nature of the relief sought, *International Union, U.A.W.* v. *Russell*, 356 U.S. 634 (1958); *United Construction Workers* v. *Laburnmium Const. Corp.,* 347 U.S. 656 (1954); *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board*, 343 P.2d 23 (Cal. 1959). WELLINGTON, *Labor and the Federal System*, 26 U. Chi. L. Rev. 542 (1959); 35 Wash. L. Rev. 196 (1960), commenting *State* v. *International Brotherhood of Team., etc.*, 333 P.2d 924 (Wash. 1959); 58 Mich. L. Rev. 288 (1959).

 Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, authorizes the federal district courts to take cognizance of actions for violation of collective bargaining agreements. However, this statutory provision does not divest the state courts or agencies of jurisdiction in actions of such a nature. *Dowd Box Co.* v. *Courtney*, 368 U.S. 502 (1962). The jurisdiction in this field is concurrent.[10] The legislative history of this section shows that Congress expressly rejected a provision incorporated in the original version of the Senate according to which the violation of agreements was unfair practice subject to the jurisdic-

---

[10] Only thirteen states—Colorado, Connecticut, North Dakota, Hawaii, Massachusetts, Michigan, Minnesota, New York, Oregon, Pennsylvania, Rhode Island, Utah and Wisconsin—and the Commonwealth of Puerto Rico have enacted legislation to regulate labor-management relations. Prentice-Hall, Labor Relations, State Laws, p. 42001 *et seq.* That is why the fashioning and development of the federal common law in labor-law matters referred to in *Textile Workers* v. *Lincoln Mills of Alabama*, 353 U.S. 448 (1957), will depend to a great extent on the interpretation of the federal district courts.

tion of the National Act, and that at the conference held it was finally decided that the performance of agreements was a question for the courts. H.R. Conf. Rep. No. 510, 80th Congress, pp. 41–42; *Textile Workers* v. *Lincoln Mills of Alabama,* 353 U.S. 448 (1957); *Association of Westinghouse Salaried Employees* v. *Westinghouse Electric Co.,* 348 U.S. 437 (1955). In *Teamsters Local* v. *Lucas Flour Co.,* 369 U.S. 95, 101 (1962), it was held that the *Garmon* doctrine was not relevant in the case of a suit under § 301 for violation of a contract. *Atkinson* v. *Sinclair Refining Co.,* 370 U.S. 238, 245 (1962), is to the same effect. And in *Lucas Flour* it was said in footnote 9 (p. 101) that "It is, of course, true that conduct which is a violation of a contractual obligation may also be conduct constituting an unfair labor practice, and what has been said is not to imply *that enforcement by a court of a contract obligation affects the jurisdiction of the N.L.R.B. to remedy unfair labor practices, as such."*

In Puerto Rico, where by express legislative declaration, agreements are vested with a public interest, the proper forum to compel compliance with the obligations contracted under a collective agreement is the State Labor Relations Board, by declaring that the violation of agreements by the employer as well as by the employee constitutes an unfair practice. This aspect of the performance of contracts was therefore removed from the action of the courts, although reserving to them the field of litigation in matter of damages for the violation thereof,[11] inasmuch as the latter involves a matter of purely private interest of the contracting parties. *Asoc. de Guardianes* v. *Bull Line,* 78 P.R.R. 680, 685 (1955). Section 1 of the Act, 29 L.P.R.A. § 62, defines public policy as follows: "It is the policy of the Government to eliminate the

---

[11] In *Sinclair Refining Co.* v. *Atkinson,* 370 U.S. 195 (1961), it was said that § 301(a) of the Federal Act did not impliedly repeal § 4 of the Norris-La Guardia Act prohibiting injunctive relief in cases involving or growing out of labor disputes, even though injunction is sought as a remedy to prevent the violation of an agreement.

causes of certain labor disputes, by developing the practices and proceedings of collective bargaining and by establishing an adequate, efficient, and impartial tribunal which will carry out this policy." *Cf.* TORRES PERALTA, *Federal Jurisdiction in Labor Relations under Section 301 of the Taft-Hartley Act: The Aftermath of the Lincoln Mills Decision*, 22 *Rev. Col. Abog. P.R.* 79 (1961). It is well to repeat here the language employed in 1952 in the opinion rendered in the *I.L.A.* case, seven years prior to the second *Garmon* case: "In any event, the right established by § 301(a) was given to the contracting parties, and it may not be inferred, neither from its text nor from its legislative history, that it was intended to deprive the states and territories from exercising their power to regulate the disdainful conduct of the parties to that agreement, when such conduct jeopardizes the very life of the community by its harmful effects on the basic structure of its economy..." (At p. 596.) And for that reason, our lawmakers—conscious of the impact of the violation of collective agreements, with their concerted concomitant actions, in the incipient industrial economy of the country—elected to define as unfair practice by the employer as well as by the union the violation of agreements, and delegated to the State Board the power to carry out and enforce the public policy consecrated in such declaration for the protection of the community.

As may be seen from the foregoing, the *Garmon* doctrine did not have the effect of modifying in any manner whatever the case of *Labor Rel. Board* v. *I.L.A.*, *supra*, and in accordance with the subsequent interpretations of its scope, it rather ratifies the jurisdiction of the local agency in considering the violation of an agreement as an unfair practice, regardless of whether it is an enterprise engaged in interstate commerce. The doctrine in the *I.L.A.* case therefore remains unaltered, buttressed by a clear policy aimed at achieving industrial peace by the respect due collective agreements and the definitive consecration of the federal author-

ities, as announced in *Lucas Flour* and *Sinclair Refining Co.*, *supra.*[12]

### III

The other issues raised by petitioner are without merit and we need not discuss them. We are convinced by a reading of the transcript of the procedures had in the State Board that the errors assigned were not committed. *Bendix Corp.* v. *N.L.R.B.*, 299 F.2d 308, *cert. denied*, 370 U.S. 827 (1962), 31 L.W. 3112.

█ The order issued in the instant case by the Labor Relations Board on June 17, 1960, will not be reversed nor modified.

---

[12] We need not discuss whether in the exercise of this jurisdiction the State Board ought to apply the federal labor or the state law principles, since both coincide as respects the specific question involved in this case: the respect due collective bargaining and the efficacy of arbitration procedures. See *Atkinson* v. *Sinclair Refining Co.*, 370 U.S. 238, 241 (1962); *Teamsters Local* v. *Lucas Flour Co.*, 369 U.S. 95 (1962); *Steelworkers* v. *American Manufacturing Co.*, 363 U.S. 564 (1960); *Steelworkers* v. *Warrior and Gulf Navigation Co.*, 363 U.S. 574 (1960); *Steelworkers* v. *Enterprise Wheel and Car Corporation*, 363 U.S. 593 (1960), commented in 49 Geo. L. J. 373 (1960); JAY, *Arbitration and the Federal Common Law of Collective Bargaining Agreements*, 37 N.Y.U.L. Rev. 448 (1962); MELTZER, *The Supreme Court, Arbitrability and Collective Bargaining*, 28 U. Chi. L. Rev. 464 (1961); BEESON, *Boundaries of State-Federal Jurisdiction in Labor-Management Relations Under the New Labor Law—A Federal View*, 13 N.Y.U. Conf. on Labor 51, 55–61 (1960); Cox, *Reflections Upon Labor Arbitration*, 72 Harv. L. Rev. 1482 (1959).

The question of concurrent jurisdiction of the state courts or agencies and the federal district courts presents a thorny problem of removal which is at its boiling point. See *Tool and Die Makers* v. *General Electric Co.*, 170 F. Supp. 945 (1959), commented in 12 Stan. L. Rev. 492 (1960); *cf. Labor Relations Board of Puerto Rico* v. *Valencia Baxt Express, Inc.*, civil No. 73–62 of the United States District Court for Puerto Rico, order of May 3, 1962.