**PUBLIC SERVICE COMMISSION OF KENTUCKY, Appellant,**

v.

**KENTUCKY WEST VIRGINIA GAS COMPANY and the Equitable Gas Company, Appellees.**

Court of Appeals of Kentucky.

Sept. 19, 1975.

Rehearing Denied Feb. 6, 1976.

Morris E. Burton, Robert T. Harrod, Frankfort, for appellant.

Clifford E. Smith, Jr., Frankfort, for appellees.

VANCE, Commissioner.

■ KRS 278.485 requires gas pipeline companies obtaining gas from producing wells located in Kentucky to furnish gas service upon request to the owner of property on or over which any producing well or gas-gathering pipeline is located or to the owners of real estate whose property and point of service is located within one-half mile of the producing well or gas-gathering pipeline.

The appellees are gas companies which have been furnishing gas to persons entitled thereto under this statute. The appellees served notice upon their customers that gas service to them would be discontinued because the gas in the gathering pipelines contained an excessive quantity of hydrogen sulfide, a harmful impurity which increases corrosiveness and which, in sufficient concentration, is lethal. A copy of the notice of discontinuance of service was filed with the appellant Public Service Commission.

The commission conducted a hearing upon the proposed discontinuance of service and ordered the service to continue. Its order was based upon the premise that the duty to furnish gas was imposed by a statute which made no provision for the commission to regulate the quality of the gas furnished thereunder. It concluded that it was without statutory authority to allow the proposed discontinuance of service.

■ It is clear that the requirement of KRS 278.485 applies only to gas from producing wells and gathering pipelines. KRS 278.485(5) provides that gas companies are not required to furnish gas from lines established on the discharge side of a compressor station or from lines connecting with storage areas.

KRS 278.485(2) requires the applicants for service under the statute to construct and maintain their own service lines and gas regulators and pay the entire cost thereof. KRS 278.485(4) relieves the gas companies from the necessity of maintaining any fixed or specified gas pressure and exonerates them from liability for any accident or damage which may result from any defect or failure of any automatic gas regulator or for any leakage or other defect or failure of any service line installed or constructed by the applicant.

The statute is applicable only to the gas as it exists in the gathering lines and, read literally, the statute requires gas companies to make that gas available (in whatever condition it is) to a special classification of customers if they want to avail themselves of it.

The Public Service Commission is empowered to enforce the provisions of the statute (KRS 278.040), and is further empowered to fix rates and minimal monthly charges (KRS 278.485(1)), to supervise the construction of the service lines and installation of gas regulators and meters and the connection thereof with the producing well or pipeline (KRS 278.485(3)), and to provide rules and regulations for the discontinuance of service for failure to pay the charges therefor. KRS 278.485(7).

No provision is made by the statute for the commission to regulate or prescribe the quality of the gas furnished and even if permitted compliance with any such regulation would be extremely difficult because the gas is furnished directly from the producing wells or gathering pipelines before it reaches the facilities of the company for cleansing impurities.

We conclude therefore the commission correctly decided that by virtue of KRS 278.485 it was without power to regulate or control the quality of the gas furnished under the statute. The conclusion of the trial court to the contrary was erroneous and the judgment herein is reversed with directions that a new judgment be entered sustaining the order of the commission.

Although there is no authority under the statute for the Public Service Commission to regulate the quality of the gas furnished pursuant to the statute and no authority under the statute to permit discontinuance of service except for nonpayment of charges, there is present in this controversy a purely legal question which has not been addressed by either the Public Service Commission or the trial court. That question is whether or not the statute is applicable under the facts of this case. It seems to us that any sensible interpretation of the statute would limit its application to gas that is commercially usable and not unreasonably dangerous to the health and safety of the user.

Evidence was introduced at the hearing before the commission that the gas in question contained potentially dangerous quantities of hydrogen sulfide. There was countervailing evidence that some of the customers had used gas from these wells in question for as long as twenty years without harmful results.

No determination was made by the commission as to whether the gas in question was unreasonably dangerous, and if so, whether the statute has any applicability.

We sustain the holding of the commission that it was without authority to regulate the quality of gas furnished pursuant to the provisions of KRS 278.485, but this decision does not foreclose further litigation seeking judicial determination as to the applicability of the statute.

The judgment is reversed with directions that a new judgment be entered sustaining the order of the commission.

REED, C. J., and STEPHENSON, JONES, PALMORE and CLAYTON, JJ., concur.