**PUBLIC SERVICE COMMISSION OF KENTUCKY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 78–3100.

United States Court of Appeals, Sixth Circuit.

Argued June 21, 1979.

Decided Dec. 12, 1979.

**440**

William M. Sawyer, Frankfort, Ky., for petitioner.

William R. Weinberg, Pratt & Weinberg, Hindman, Ky., Kathleen M. Guinane, Hazard, Ky., for amicus curiae Short et al.

Joseph G. Stiles, The Federal Energy Regulatory Comm., Washington, D. C., for respondent.

Augustine A. Mazzei, Jr., Lawrence B. Nydes, Pittsburgh, Pa., for intervenor Ky-WVA Gas.

Larry H. York, Appalachian Research & Defense Fund of Kentucky, Inc., Somerset, Ky., for intervenors Short et al.

Before WEICK and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.

MERRITT, Circuit Judge.

This appeal raises questions concerning the jurisdiction of the Federal Energy Regulatory Commission to regulate state-mandated deliveries of natural gas from wellheads and gathering lines to local customers. The Public Service Commission of Kentucky has petitioned the Court to review orders of the federal commission asserting such regulatory authority. We conclude that the orders of the federal commission constitute a valid exercise of jurisdiction over the transportation of natural gas in interstate commerce.

### I.

Natural gas commonly flows to consumers from the wells of producers through a series of three pipelines. The gas in its crude form first flows through a network of gathering lines that converge at compressor stations. At the compressor stations the gas undergoes cooling, scrubbing, dehydration and compression. The cleansed and pressurized gas next flows through high pressure transmission lines to local distributors. The local distributors deliver natural gas to its ultimate consumers through a third set of lines.[1]

It is at the initial, gathering-line, stage that the state and federal regulatory agencies involved in this case have staked competing claims to exclusive jurisdiction. The Kentucky commission claims jurisdiction under section 278.485 of the Kentucky Revised Statutes (Baldwin 1977). Section 278.485 provides that owners of property located within one-half mile of a wellhead or gathering pipeline can demand natural gas service, subject only to terms prescribed by the Public Service Commission of Kentucky. Section 1(b) of the Natural Gas Act of 1938,[2] upon which the federal commission bases its claim, requires federal regulation of the "transportation" and "sale for resale" of natural gas "in interstate commerce" but precludes federal jurisdiction over the "production and gathering" or the retail sale of natural gas. Section 7(c) requires a pipeline company to obtain a certificate of public convenience and necessity before engaging in such regulated activity.[3] Pursuant to the "transportation" clause of section 1(b), the federal commission has declared that Kentucky West Virginia Gas Company, an interstate pipeline company which owns and operates approximately 2500 natural gas wells in Kentucky, first must obtain a certificate of public convenience and necessity before furnishing natural gas to local customers under Kentucky law.

It is the position of the Kentucky commission that the federal commission has no statutory authority to regulate section 278.485 deliveries of natural gas. The Kentucky commission argues that natural gas, in the gathering line stage, has not yet entered the stream of interstate commerce within the meaning of section 1(b) of the Natural Gas Act. According to the Kentucky commission, the transportation of natural gas during the gathering line process is intrastate transportation. Moreover, the Kentucky commission contends, the gathering line movement of natural gas is part of the exempt "production and gathering" process.

The competing federal and state claims in this case result from the recent extraordi-

1. *See generally Calvert v. Panhandle Eastern Pipe Line Co.,* 255 S.W.2d 535 (Tex.Civ.App. 1953) for a diagrammatic depiction of the flow of natural gas through a compressor station, and also *H. Williams & C. Meyer, Manual of Oil and Gas Terms* 99 (1976).

2. 15 U.S.C. § 717(b) (1976).

3. 15 U.S.C. § 717f(c) (1976).

nary shortage of natural gas.[4] Equitable Gas Company, the corporate parent of Kentucky West Virginia, depends on Kentucky West Virginia and several other interstate pipeline companies to supply natural gas to it for resale in Pennsylvania and West Virginia. When Equitable began to experience curtailments from its other major suppliers in the early 1970s, it called upon Kentucky West Virginia to fill the deficit. Kentucky West Virginia, which had complied with the local preference provision of Kentucky law since 1956, thereupon announced that it no longer would provide gas to new customers pursuant to the Kentucky statute.

The Kentucky commission ordered Kentucky West Virginia to continue to observe the requirements of the state law. In addition the agency imposed a fine on Kentucky West Virginia for its previous refusals to comply.[5] The Circuit Court of Franklin County, Kentucky affirmed the order and upheld imposition of the monetary penalty.[6]

The company then filed the administrative proceeding before the federal commission. The federal commission on January 27, 1977 issued a declaratory order holding that transportation through gathering lines and sales to local residents by Kentucky West Virginia under section 278.485 are subject to federal jurisdiction.[7] The Kentucky commission unsuccessfully sought a rehearing. In denying the rehearing, though, the federal commission said that federal natural gas jurisdiction covers only sales made from the interstate transmission portion of the Kentucky West Virginia system.[8]

Kentucky West Virginia filed a motion for clarification. The federal commission ruled in response that *all* of the company's sales of gas transported in such gathering lines were subject solely to federal regulation.[9] The state sought a rehearing of the clarifying order.[10] Pursuant to § 19(b) of the Natural Gas Act, the Kentucky commission then petitioned this Court to review the validity of the federal orders.

## II.

■ The Natural Gas Act was the product of a congressional desire to assure an adequate, reliable and reasonably-priced supply of natural gas for the entire nation.[11] Congress sought to achieve this objective by creating a comprehensive regulatory framework [12] through which, among

4. *See generally* Breyer & MacAvoy, *The Natural Gas Shortage and the Regulation of Natural Gas Producers*, 86 Harv.L.Rev. 941, 965–67 (1973).

5. The parties dispute the actual amount of the fine. The State has indicated that the fine totals $28,300 ($100.00 × 283 customers denied service as of January 1, 1973). Joint Appendix at 25–27. According to Kentucky West Virginia, however, the penalty now amounts to over $102 million ($100 × 800 customers denied service after January 1, 1973 × 1275 days). *Id.* at 9.

6. *Public Service Commission of Kentucky v. Kentucky West Virginia Gas Company*, Civ.Action No. 84601 (Franklin Co. Circuit Ct., April 22, 1976).

7. Declaratory Order and Findings and Order Granting Petition to Intervene, Doc.No.CP76–394 (January 27, 1977).

8. Order Denying Rehearing and Reconsideration, Doc.No.CP76–394 (March 25, 1977).

9. Order Granting Motion for Clarification and Amending Declaratory Order, Doc.No.CP76–394 (November 10, 1977).

10. *See* Order Denying Rehearing, Doc.No. CP76–394 (January 9, 1978).

11. *See California v. Southland Royalty Co.*, 436 U.S. 519, 523, 98 S.Ct. 1955, 56 L.Ed.2d 505 (1978) (FPC may require lessor to continue certificated gas service by lessee upon lease expiration because "fundamental purpose" of Natural Gas Act is to secure sufficient natural gas supply); *Sunray Mid-Continent Oil Co. v. FPC*, 364 U.S. 137, 147, 151–54, 80 S.Ct. 1392, 4 L.Ed.2d 1623 (1960) (FPC may issue certificate of unlimited duration because Natural Gas Act seeks to provide "permanent . . . bond of protection" to consumers).

12. *See FPC v. Louisiana Power & Light Co.*, 406 U.S. 621, 631, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972) (FPC regulation to complement that of states in order to protect public welfare from private subversion); *Atlantic Refining Co. v. Public Serv. Comm'n*, 360 U.S. 378, 388, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959) (process for certification of natural gas transportation is "heart of the [Natural Gas] Act"); *Panhandle Eastern Pipe Line Co. v. Public Serv. Comm'n*, 332 U.S. 507, 520, 68 S.Ct. 190, 197, 92 L.Ed. 128 (1947) ("Congress meant to create a comprehensive and effective regulatory scheme").

other things, the movement of natural gas through the interstate pipelines could be coordinated. In borderline cases involving the respective ambits of state and federal regulatory authority, therefore, courts ask whether it is within the capability of states to regulate in accordance with the purposes of the Natural Gas Act.[13] If practicable regulation exceeds the competence of the state governments, courts can preserve the efficacy of the Natural Gas Act only by determining that federal authority prevails.[14]

■ The inability of the states to regulate effectively the nationwide allocation of natural gas supplies, as attempted in part by Kentucky here, is apparent. The Kentucky law seeks to reserve a supply of natural gas to certain state residents. The statutory plan, independent of federal regulatory control, denies to consumers outside of Kentucky and to Kentuckians whose real estate lies beyond one-half mile of wellheads and gathering lines the equal access that they otherwise would enjoy to Kentucky natural gas. If pursued by many or all producing states in times of extraordinary scarcity, the Kentucky policy would impede, if not prohibit altogether, accomplishment of the congressional desire to provide an adequate supply of natural gas for the entire nation.

The need for paramount federal authority here is compelling. As the Supreme Court noted in *FPC v. Louisiana Power & Light Co.*, the "state agency . . . would be obliged to regulate in the State, not the national interest."[15] Indeed, the "unavoidable conflict between producing States and consuming States" makes "the desirability of uniform federal regulation . . . abundantly clear."[16]

Federal authority to regulate the allocation of natural gas supplies derives from the "transportation" clause of section 1(b) of the Natural Gas Act. The Supreme Court emphasized in *Louisiana Power, supra*, that, where allocation of acutely scarce natural gas supplies is at issue, the interstate transportation jurisdiction of the federal government must be construed broadly.[17] In *Louisiana Power* the Court upheld federal allocation and curtailment regulations under the auspices of the transportation clause. The Court thereby sought to ensure that the federal government could allocate natural gas fairly among users.[18]

■ We are unwilling in the present case to give a more narrow meaning to the transportation clause. As the Supreme Court stated in *Louisiana Power*, the trans-

---

13. *See FPC v. Louisiana Power & Light Co.*, 406 U.S. 621, 631, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972) (FPC has authority to curtail direct sales deliveries in times of natural gas shortage); *FPC v. Transcontinental Gas Pipe Line Corp.*, 365 U.S. 1, 19–20 (1961) (FPC has power to consider "economic" waste of natural gas committed to interstate commerce outside producing state). *Compare Guss v. Utah Labor Board*, 353 U.S. 1, 3–12, 77 S.Ct. 598, 609, 1 L.Ed.2d 601 (1957) (applying similar preemption analysis in context of National Labor Relations Act).

14. *FPC v. Louisiana Power & Light Co.*, 406 U.S. 621, 631, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972); *FPC v. Transcontinental Gas Pipe Line Corp.*, 365 U.S. 1, 19–20, 81 S.Ct. 435, 5 L.Ed.2d 377 (1961). *Cf. Perez v. Campbell*, 402 U.S. 637, 644–49, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (discussing Supremacy Clause analysis).

15. 406 U.S. 621, 633, 92 S.Ct. 1827, 1834–1835, 32 L.Ed.2d 369 (1972).

16. *FPC v. Louisiana Power & Light Co.*, 406 U.S. 621, 633–35, 92 S.Ct. 1827, 1835–1836, 32 L.Ed.2d 369 (1972); *see id.* at 633 n. 12, 92 S.Ct. at 1835 n.12 (relating unavoidable conflicts between producing states and consuming states). *Cf. Pennsylvania v. West Virginia*, 262 U.S. 553, 595–96, 43 S.Ct. 658, 67 L.Ed. 1117 (1923) (admonishing against state protectionism); *The Federalist* No. 42 (J. Madison) ("[w]e may be assured by past experience" of the Confederation that states assiduously will pursue own benefit in matters of commerce).

17. 406 U.S. at 640–41. *Cf. Panhandle Eastern Pipe Line Co. v. Public Serv. Comm'n*, 332 U.S. 507, 523, 68 S.Ct. 190, 92 L.Ed. 128 (1947) (interruption of service is largely related to transportation and thus within federal jurisdiction); *Backus v. Panhandle Eastern Pipe Line Co.*, 558 F.2d 1373, 1375–76 (10th Cir. 1977) (Oklahoma statute granting owners of land crossed by gas pipeline right to gas violates Supremacy Clause).

18. 406 U.S. at 641, 92 S.Ct. at 1838.

portation clause "plainly embraces regulation of the quantities of gas that pipelines may transport." [19] The states thus may not, without federal authorization, divert from the interstate market supplies of natural gas for the use of state residents only.

The Kentucky statute, according to the PSCK, regards the gathering line natural gas as a distinctly intrastate commodity.[20] The unprocessed hydrocarbons, of course, are not precisely the same product that reaches Pennsylvania and West Virginia consumers through the high pressure transmission lines of Kentucky West Virginia Gas Company. Yet the difference in the nature of the gas is not significant in determining the applicability of federal regulation. The ultimate sale in other states of a substantial part of a producer's natural gas output invokes federal jurisdiction over the entire volume of production.[21] The natural gas here at issue begins its journey in interstate commerce at the wellhead.

Nor do we find merit in the contention that the "production and gathering" clause gives the PSCK exclusive jurisdiction over section 278.485 distributions. The production and gathering exemption, as authoritatively construed by the Supreme Court, pertains only to the operation of properties involved in the extraction and collection of natural gas.[22] States have no power under the proviso to control allocation of natural gas. To adopt the spacious conception of the production and gathering clause proposed by PSCK, we would have to repudiate a clear and compelling line of decisions to the contrary.[23]

We believe, therefore, that the Natural Gas Act assigns to the FERC exclusive regulatory responsibility for transportation of Kentucky West Virginia natural gas from wellheads through gathering lines. That responsibility includes the power to prohibit deliveries of natural gas for which no certificate of public convenience and necessity has been issued.

**19.** 406 U.S. at 640, 92 S.Ct. at 1838.

**20.** *See Public Serv. Comm'n v. Kentucky West Virginia Gas Co.*, 531 S.W.2d 491 (Ky.1975) (§ 278.485 mandates only sales of natural gas from gathering lines prior to completion even of rudimentary processing for quality control).

**21.** *California v. Lo-Vaca Gathering Co.*, 379 U.S. 366, 369–70, 85 S.Ct. 486, 13 L.Ed.2d 357 (1965) (fact that substantial part of gas would be resold invokes federal jurisdiction over entire transaction). *See Interstate Natural Gas Co. v. FPC*, 331 U.S. 682, 689, 67 S.Ct. 1482, 1486, 91 L.Ed. 1742 (1947) (because gas flows without interruption from wellhead to consumers, increase of pressure in compressor stations is "merely an incident in the interstate commerce rather than . . . origin").

**22.** The Supreme Court on several occasions has described the narrow confines of the exemption. The "natural and clear meaning" of the phrase, said the Court, is that it encompasses "the producing properties and gathering facilities of a natural-gas company." *FPC v. Panhandle Eastern Pipe Line Co.*, 337 U.S. 498, 505, 69 S.Ct. 1251, 1256, 93 L.Ed. 1499 (1949). More specifically, the Court has ruled that the production or gathering exception "relates to the physical activities, processes and facilities of production or gathering, but not to sales of the kind affirmatively subjected to Commission jurisdiction." *United Gas Improvement Co. v. Continental Oil Co.*, 381 U.S. 392, 402, 85 S.Ct. 1517, 1523, 14 L.Ed.2d 466 (1965). As exam-

ples of what the exemption entails, the Court has noted that federal regulators thereby have "no control over the drilling and spacing of wells and the like." *Colorado Interstate Gas Co. v. Fed'l Power Comm'n*, 324 U.S. 581, 603, 65 S.Ct. 829, 839, 89 L.Ed. 1206 (1945). *See* Kuntz, *Statutory Well Spacing and Drilling Units*, 31 Okla.L.Rev. 349 (1978) for an example of the permissible subjects of plenary state regulation under the production or gathering exemption. The Court furthermore has stated that states may exert this exempt authority under the proviso only "in furtherance of conservation or other legitimate state concerns." *Interstate Natural Gas Co. v. Fed'l Power Comm'n*, 331 U.S. 682, 690, 67 S.Ct. 1482, 1487, 91 L.Ed. 1742 (1947). Throughout its consideration of the production and gathering exemption the Court has observed the precept that "[e]xceptions to the primary grant of jurisdiction in section [1(b)] are to be strictly construed." *Id.* at 690–91, 67 S.Ct. at 1487.

**23.** *See* note 22, *supra; Phillips Petroleum Co. v. Wisconsin*, 347 U.S. 672, 679 n. 7, 74 S.Ct. 794, 98 L.Ed. 1035 (1954) (discussing legislative history of production and gathering exemption); Note, *Legislative History of the Natural Gas Act*, 49 Geo.L.J. 695, 720–22 (1956) (production and gathering exemption does not derogate from assertion by Congress of federal control over transportation of natural gas in interstate commerce).

Accordingly, the orders of the FERC are affirmed.